# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT J. KRAUS and | : | CIVIL ACTION |
| MARGARET M. KRAUS, h/w | : | |
| | : | |
| v. | : | |
| | : | |
| ALCATEL-LUCENT, ALLEN-BRADLEY | : | |
| COMPANY, AMETEK, INC., BBC BROWN | : | |
| BOVERI, k/n/a ABB, Inc., BELDEN WIRE | : | |
| & CABLE COMPANY, LLC, CBS | : | |
| CORPORATION, formerly known as | : | |
| Westinghouse Electric Corporation, | : | |
| CLARK CONTROLLER CO., ESPEY | : | |
| MANUFACTURING & ELECTRONICS | : | |
| CORP., FORD MOTOR CO., GENERAL | : | |
| DYNAMICS, GENERAL ELECTRIC | : | |
| COMPANY, GOULD ELECTRONICS, | : | |
| INC., GTE PRODUCTS OF | : | |
| CONNECTICUT CORPORATION, | : | |
| HONEYWELL INTERNATIONAL, | : | |
| HONEYWELL, INC., IMO INDUSTRIES, | : | |
| INC., formerly known as DeLaval Steam | : | |
| Turbine Company, ITT INDUSTRIES, | : | |
| L-3 COMMUNICATIONS, LOCKHEED | : | |
| MARTIN CORPORATION SERVICE | : | |
| COMPANY, METROPOLITAN LIFE | : | |
| INSURANCE CO., MINNESOTA MINING | : | |
| AND MANUFACTURING, MOTOROLA | : | |
| SOLUTIONS, NAVCOM DEFENSE | : | |
| ELECTRONICS, NORTHROP GRUMMAN | : | |
| NORDEN SYSTEMS, NORTHROP | : | |
| GRUMMAN CORPORATION, PHILIPS | : | |
| NORTH AMERICA, LLC, RAYTHEON, | : | |
| ROCKBESTOS CO., ROCKWELL | : | |
| COLLINS, INC., ROGERS | : | |
| CORPORATION, SPACE SYSTEMS/ | : | |
| LORAL, SQUARE D COMPANY, UNISYS | : | |
| and UNITED TECHNOLOGIES | : | NO.  18-2119 |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                                                    **July 25, 2018**

Plaintiffs Robert and Margaret Kraus move to remand this asbestos case to the Pennsylvania state court from which it was removed pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  They argue that because the defendants fail to state a colorable federal defense, we lack subject matter jurisdiction.  The removing defendants insist that as federal government contractors, they properly removed the case.

We conclude that the removing defendants have satisfied the four requirements of the federal officer removal statute.  Thus, we shall deny the motion to remand.

### Background

According to his complaint, Robert Kraus (Kraus)[1] was exposed to asbestos during his service in the Navy aboard the *U.S.S. Cambria* and later when working at General Electric.  From July 1964 through May 1967, Kraus was a seaman on the *Cambria* as the electronics officer and subsequently the communications officer working in close proximity to asbestos-containing electronic equipment.[2]

Kraus also contends that he suffered from asbestos exposure while employed by General Electric after his Navy service.[3]  While working for General Electric from 1969 to 1981, Kraus worked near asbestos-containing electronic equipment, and he was

---

[1] Margaret Kraus brings a consortium claim only.  All references to Kraus are to Robert Kraus.

[2] Notice of Removal, Ex. A, Compl. ("Compl.") (Doc. No. 1-1) ¶ 6(a).

[3] As stated in the complaint, the exposure at General Electric is "a separate claim against GE as is the product claim against GE."  *Id.* ¶ 10.

exposed to asbestos in the office building located at 32nd and Chestnut Streets in Philadelphia.[4]

The removing defendant contractors manufactured and installed equipment and materials on the *Cambria* that contained asbestos, including ship service turbine generators, turbines, radar equipment, and radio equipment.[5] The defendants manufactured and designed equipment and materials for the Navy in conformity with the Navy's strict and detailed guidelines, known as military specifications (MilSpecs).

After being diagnosed with mesothelioma in December 2017, Kraus filed suit in the Court of Common Pleas of Philadelphia County, asserting claims for design defect and failure to warn.[6] He alleges that the defendants negligently processed, manufactured, packaged, distributed, delivered and sold products containing asbestos without warnings. In support of his design defect claim, Kraus contends that the defendants were negligent in manufacturing, selling, or supplying asbestos-containing products, which were defective because they contained asbestos.[7] He also contends that the defendants' design of the products and failure to warn him of the health hazards associated with asbestos exposure were the actual and proximate causes of his mesothelioma.

---

[4] *See id.* ¶¶ 6(c)–(e), 6(h), 7.

[5] *See, e.g.*, CBS Resp. (Doc. No. 78) at 2; Gen. Elec. Co. Resp. (Doc. No. 82) at ECF 3; UTC Resp. (Doc. No. 84) at 3–4. Defendant United Technologies Corporation disputes its involvement in any manufacture or design of equipment used aboard the *Cambria*, but nonetheless opposes remand. *See generally* UTC Resp.

[6] Compl. ¶ 13. Kraus incorporates by reference all allegations of the complaints filed in related cases in the Philadelphia Court of Common Pleas, as well as the Master Plaintiffs' Complaint. *Id.* ¶ 8; CBS Resp., Ex. A, Pl.'s General Master Long-Form Compl. (Doc. No. 78-1). These allegations include design defect claims.

[7] Compl. ¶¶ 10(a), 12(g); *see also* CBS Resp., Ex. A, Master Long-Form Compl.

The defendants timely removed the case under 28 U.S.C. § 1442(a)(1). Kraus responded by moving for remand, arguing that the defendants have not stated a colorable federal defense to the failure-to-warn claim. Opposing remand, the defendants contend they state a colorable federal defense, supported by several affidavits. They rely on the government contractor defense annunciated in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988).

**Analysis**

In the typical case, a federal defense does not give rise to federal question jurisdiction. *Jefferson Cty. v. Acker*, 527 U.S. 423, 430 (1999) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). The federal officer removal statute, 28 U.S.C. § 1442(a)(1), is an exception to the rule. It allows a defendant to remove a nonfederal action where the defendant has a defense based on federal law. *Id.* at 430–31.

A defendant may remove under § 1442(a)(1) only where the facts, viewed in the light most favorable to the defendant, entitle the defendant to a complete defense. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) (quoting *In Re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 466 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 980 & 994 (2016)). A defendant "need not win his case before he can have it removed." *Id.* at 815 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). At the removal stage, the defendant need only show that the asserted *Boyle* defense is "colorable," that it is legitimate and can "reasonably be asserted, given the facts presented and the current law." *Id.* (citation omitted). A court does not "determine credibility, weigh the quantum of

evidence or discredit the source of the defense" at this stage. *Id.* Instead, we only determine whether there are sufficient facts alleged to raise a colorable defense.

Although the federal officer removal statute originally applied only to federal officers, it was amended to expand its scope to cover "any person acting under that officer." 28 U.S.C. § 1442(a)(1). The statute now applies if the defendant claims it was acting under the direction of a federal officer or agency. *Id.*

The statute provides:

> A civil action . . . commenced in a State court and that is against . . . any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office. . . .

Unlike the general removal statute, which is construed against removal, the federal officer removal statute is broadly construed in favor of a federal forum. *Papp*, 842 F.3d at 811–12 (quoting *Defender Ass'n*, 790 F.3d at 466–67 (internal citation and quotation marks omitted)).

An action may be removed under the federal officer removal statute where: (1) the defendant is a "person" within the meaning of the statute; (2) the claims are based upon the defendant's conduct while "acting under" the federal government, its agencies, or its officers; (3) the claims are "for, or relating to" an act under color of federal office; and (4) the defendant raises a colorable federal defense to the plaintiff's claims. *Id.* at 812 (quoting *Defender Ass'n*, 790 F.3d at 467). In this case, the removing defendants have satisfied all four requirements.

The defendants are persons within the meaning of § 1442(a)(1). For purposes of the statute, a person includes corporations and companies. *See id.*

The defendants were "acting under" a federal agency pursuant to contracts with the Navy to provide equipment and materials. They produced or supplied equipment or materials to outfit the *Cambria* that the Navy itself would have had to produce. *See id.* (quoting *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012), and citing *Defender Ass'n*, 790 F.3d at 468–70).

The alleged conduct was "for or relating to" a federal office. Since the statute was amended to add the words "or relating to," courts have taken a more expansive view of this requirement. The conduct is for or relating to a federal office if there is "a connection or association between the act in question and the federal office." *Id.* (quoting *Defender Ass'n*, 790 F.3d at 471). The connection between the conduct Kraus alleges caused his injury and the federal government is clear. With respect to the claim for the failure to warn of the dangers of asbestos aboard the *Cambria*, the defendants assert that the equipment was manufactured for the Navy under its direct supervision, control, and directive. The Navy's control extended to the content of any written warnings associated with the ship's equipment. Hence, because the absence of adequate warnings was attributable to the Navy, the defendants meet the third requirement of § 1442(a)(1).

To satisfy the fourth requirement, the defendants must raise a colorable federal defense. A defense is "colorable" if it could "reasonably be asserted, given the facts presented and the current law," and could "establish a complete defense at trial." *Id.* at 815 (quoting *Hagen*, 739 F. Supp. 2d at 782–83; and Black's Law Dictionary (10th ed.

2014).  This is the point of contention in this case.

In moving to remand, Kraus addresses only his failure-to-warn claim, not his design defect claim.  In the context of a failure-to-warn claim, the defense applies where (1) the government approved reasonably precise specifications covering warnings; (2) the warnings conformed to those specifications; and (3) the defendant warned the government about any asbestos hazards that were known to it but not to the government.  *Boyle*, 487 U.S. at 512; *Papp*, 842 F.3d at 814 & n.6.

The removing defendants have shown that the Navy approved specifications for equipment containing asbestos aboard the *Cambria*, including the presence and the content of warnings, and they provided the warnings required by the Navy.  There was no need to advise the Navy about any asbestos hazards because the Navy was already aware of them.  The defense does not require the contractor to warn the government of hazards where "the government knew as much or more than the defendant contractor about the hazards of the . . . product."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 784 (E.D. Pa. 2010) (citing *Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1216 (3d Cir. 1989)).

To demonstrate that the Navy exercised control over the manufactured products, including warnings, the defendants have submitted affidavits and the pertinent MilSpecs.  They show that the removing defendants have a colorable government contractor defense.

In his affidavit, retired Rear Admiral Roger B. Horne, Jr. who served in the Navy as a commander, officer or manager of several shipyards throughout the country, eventually achieving the rank of chief engineer and deputy commander for Naval Sea

Systems Command, explains the Navy's expansive control over the shipbuilding process.[8]  He states that the design and manufacture of ships and their component parts, including the equipment installed on the *Cambria*, was closely supervised and controlled by Naval officers.[9]  The equipment was manufactured and installed in compliance with Navy MilSpecs.[10]  In short, Horne stated that "the Navy retained the 'final say' over the design attributes of naval ships and their equipment."[11]

The MilSpecs mandated that asbestos be used to manufacture certain equipment, including, for example, auxiliary turbines incorporated into the defendant contractors' equipment.[12]  The insulation and gaskets used on the turbines, though not necessarily supplied or installed by the defendants, were made of asbestos, as required by the MilSpecs.[13]

According to Horne, any equipment-related writings were dictated by the MilSpecs and any warning was subject to the Navy's authorization and approval.[14]  When equipment suppliers affixed a warning, the Navy limited the warning to *use* of the equipment that might cause harm.[15]  It was "the Navy's intent to include only warnings concerning how someone might be immediately physically injured by their actions or

---

[8] CBS Resp., Ex. B, Decl. of Roger B. Horne, Jr. RADM USN (Ret.) ("Horne Aff.") (Doc. No. 78-2) ¶ 1.

[9] Horne Aff. ¶¶ 9–14, 16–18, 20–22, 24–31, 39–43.

[10] *Id.* ¶¶ 40–41, 43.

[11] *Id.* ¶ 21.

[12] CBS Resp., Ex. C (Doc. No. 78-3), MilSpecs, § 3.1, Table I, Part B, Subsection y, at ECF 14.

[13] *Id.* § 3.2.13.1; CBS Resp., Ex. D (Doc. No. 78-4), MilSpecs, §§ 5.4, 5.4.3.

[14] Horne Aff. ¶¶ 35–37, 43.

[15] *Id.* ¶ 36.

cause serious damage to equipment."[16]  According to Horne, the Navy chose to address the hazards of asbestos exposure through personnel training instead of relying on warnings.[17]

Dr. Samuel Forman was retained by the Navy to study its knowledge of asbestos hazards and its response.  He learned that the Navy knew of such hazards in 1922, and later set up protective measures to prevent asbestos-related injury in 1941, including spraying water to dampen asbestos dust, use of respirators, installing local exhaust ventilation, and establishing enclosed chambers to prevent escape of dust.[18]  Despite this knowledge, the Navy rejected "participation from manufacturers in its efforts to alert personnel to potential asbestos hazards in Navy operations," handling warnings on its own.[19]  Indeed, the Navy did not want "any change in the specifications as the performance with the present materials [wa]s entirely satisfactory."[20]  Through the 1960s, while Kraus served on the *Cambria*, the Navy never "instructed or permitted a supplier of engineering equipment . . . to affix or provide any asbestos-related warning with its equipment."[21]  The Navy opted to address health hazards in the workplace, such as asbestos exposure, through on-the-job training instead of written warnings affixed to

---

[16] *Id.*

[17] *Id.* ¶ 38.

[18] CBS Resp., Ex. F, Report of Samuel A. Forman ("Forman Rpt.") (Doc. No. 78-6) ¶¶ 27, 31.

[19] *Id.* ¶ 67.

[20] *Id.*

[21] *Id.* ¶ 69.

products or structures in the workplace.[22]  Manufacturers and suppliers were not permitted to affix warnings without the Navy's approval.

Thomas F. McCaffery, a Navy Commander who has extensively researched military policies, practices, and procedures related to the design and procurement of products and equipment installed on Naval vessels,  explained that any radar or radio equipment "supplied to the Navy by its manufacturer [that] incorporated an asbestos-containing component . . . was either mandated by the Navy through the applicable government specifications or approved by the Navy after careful consideration of the design and application of that component."[23]  He also confirmed that the Navy controlled all warnings affixed to equipment aboard its vessels.  "Manufacturers were not permitted (either under the specifications or as a matter of Navy practice) to include any type of warning or cautionary statement that was not required or approved by the Navy."[24]

McCaffery explained that the Navy possessed sophisticated and detailed knowledge of health hazards related to asbestos exposure as early as the 1940s, long before Kraus's service aboard the *Cambria*.[25]  Indeed, as of 1958, "the Navy identified inhalation of 'asbestos dust' as a potential occupational health hazard."[26]

Retired Rear Admiral David P. Sargent, Jr., who had been assigned to positions primarily focused on the operation and maintenance of Navy warships from 1967 until 1988, states that government contractors could not deviate from the Navy's

---

[22] *Id.*

[23] UTC Resp., Ex. C, Decl. of Thomas F. McCaffery (Doc. No. 84-1) ("McCaffery Aff.") ¶¶ 3, 5, 12.

[24] *Id.* ¶¶ 16, 22.

[25] *Id.* ¶¶ 23–25.

[26] *Id.* ¶ 25.

specifications without express written approval.[27]  Consequently, a contractor could not affix written warnings on the equipment installed aboard the *Cambria* regarding the risk of asbestos exposure because the Navy did not expressly mandate such warnings.[28] Sargent reiterated what McCaffery and Forman stated—that the Navy was aware of the risk imposed by asbestos exposure as early as the 1940s.[29]

The defendants have presented sufficient facts making out a government contractor defense.[30]  First, they have shown that the government exercised complete control over the specifications for the manufacture of the equipment and the content of any written warnings or labels on the equipment installed aboard the *Cambria*.  The Navy retained "the final say" over design attributes of naval ships and all equipment. Any equipment-related warnings were subject to the MilSpecs and to the Navy's authorization and approval.  Second, any warnings conformed to those specifications. "Manufacturers were not permitted (either under the specifications or as a matter of

---

[27] Gen. Dynamics Corp. and Motorola Solutions, Inc. Resp., Ex. A, Decl. of David P. Sargent, Jr. ("Sargent Aff.") (Doc. No. 88-1) ¶¶ 23–30.

[28] *See id.* ¶¶ 56–78.

[29] *See, e.g.*, *id.* ¶ 64.

[30] The defendants point out that Kraus's motion to remand addresses only his failure-to-warn claim as belonging in state court, omitting any discussion of a design defect claim.  The defendants argue that they do not have any burden to offer evidence demonstrating federal jurisdiction until the plaintiff challenges jurisdiction in a motion to remand.  *Dart Cherokee Basin Op. Co. v. Owens*, 135 S. Ct. 547, 553 (2014); *Ruppel*, 701 F.3d at 1184 n.1.  Accordingly, they argue that there is no need to address Kraus's arguments to remand the failure-to-warn claim because the design defect claims, which Kraus failed to address, are removable.  *See, e.g.*, CBS Resp. at 8 (citing *Ruppel*, 701 F.3d at 1182).

This opinion focuses on Kraus's failure-to-warn theory because that is the argument he makes in his motion to remand.  In any event, the defendants also state a colorable government contractor defense with respect to a design defect claim.  The affidavits explain that the defendants' equipment and materials installed aboard the *Cambria* were subject to and conformed to precise Navy specifications.  The defendants had no obligation to alert the Navy as to the hazards of asbestos exposure because there is evidence the Navy was well aware of them prior to Kraus's service.  The defendants contend that the equipment was designed and/or manufactured at the request of the government and despite knowledge of the hazards associated with asbestos exposure.  This establishes the causal nexus between their defense and Kraus's claim.  *Ruppel*, 701 F.3d at 1181–85 (quoting *Boyle,* 487 U.S. at 511–12).

Navy practice) to include any type of warning or cautionary statement that was not required or approved by the Navy."[31]  As to the third element, defendants had no duty to advise the Navy of what the Navy knew about the hazards of asbestos exposure.  In short, the defendants did not have superior knowledge it withheld from the Navy.

## Conclusion

If the removing defendants prove the facts alleged in the notice of removal and affidavits, they will have established a *prima facie* federal government contractor defense.  Thus, because the removing defendants have asserted a colorable federal defense, we shall deny the motion to remand.

---

[31] McCaffery Aff. ¶¶ 16, 22.