IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROBERT J. KRAUS, and | : | CIVIL ACTION |
| MARGARET M. KRAUS | : | |
| | : | |
| v. | : | |
| | : | |
| ALCATEL-LUCENT, et al. | : | NO. 18-2119 |

O P I N I O N

JACOB P. HART  DATE: 7/22/2019
UNITED STATES MAGISTRATE JUDGE

In this case, plaintiffs Robert and Margaret Kraus are suing various defendants, including Space Systems/Loral, LLC ("SSL") with regard to damages Robert Kraus suffered from exposure to asbestos. Plaintiffs have filed a motion to compel discovery from SSL, which was assigned to the undersigned by the honorable Timothy J. Savage. For the reasons set forth below, Plaintiffs' motion will be granted in part and denied in part.

I.   Applicable Legal Standards

Under Federal Rule of Civil Procedure 37, a party may move for an order compelling disclosure or discovery after conferring, or attempting to confer, with good faith with the opposing party in an attempt to obtain it without court action. F. R. Civ. Pr. 37(a)(1). Such a motion may be filed where a party fails to answer an interrogatory submitted under Rule 33, or fails to either produce documents or permit inspection, as requested under Rule 34. Id. at (a)(3)(B). Evasive or incomplete answers and responses are treated as a failure to answer or respond. Id. at (a)(4).

A party may also seek sanctions from the court where the opposing party has not obeyed a discovery order. Fed. R. Civ. Pr. 37(b)(2)(A). These may include directing that the matters embraced in the order be taken as established for purposes of the action. Id. at 37(b)(2)(A)(i).

II.  Discussion

A.  Interrogatories to Which Answers Were Provided

In their discovery motion, Plaintiffs maintain that SSL "refused to answer" Interrogatory Nos. 3, 4, 6, 12, 13, 19, 20, 28, 33, 38 and 42. Plaintiffs' Memorandum at 4. In fact, SSL did answer all of the interrogatories except for 28, 38 and 42. The interrogatories are set forth below, followed by SSL's responses. I have excluded the approximately five pages of objections and commentary which precede all of SSL's responses, (which stand apart from the three pages of objections which precede them) except where specifically noted.

**Interrogatory No. 3: Please state whether or not you are a corporation. If so, state: (a) your correct corporate name; (b) the state of incorporation; (c) the date of your incorporation; (d) the address of your principal place of business; (e) the addresses of any other places of business; (f) whether or not you have ever held a certificate of authority to do business in this state; (g) whether or not you have a registered agent for the purpose of accepting service in this state, and if so, the name and present address of that agent; (h) state your corporate purpose; (i) state whether or not you have or have had subsidiary or predecessor corporation(s) and/or corporations whose liabilities for asbestos you have assumed hereafter predecessor [*sic?*] if so: (1) the name of each subsidiary and/or predecessor; (2) its date(s) of incorporation, if a corporation of each such corporation (*sic?*); (3) state(s) of incorporation of each such corporation; (4) the corporate purpose of such corporation.**

**Response: No.** SSL has also objected that the term "corporations whose liabilities for asbestos you have assumed" on the basis that it is unintelligible and it "calls upon SSL to ratify a conclusion of law, answer a question of law, contemplate a legal standard, or admit the truth of a legal conclusion."

It is obvious from SSL's name that it is a limited liability company and not a corporation. That is the basis for the "No" answer provided. It would have been more helpful if SSL had simply stated that it was a limited liability company, and then answered the subparts of the question to the extent that they apply to SSL. If they did not apply, SSL could simply have so stated. I will direct it to provide a response which is compliant with these suggestions.

Further, as SSL has informed the court in its response, Plaintiffs are seeking to prove that SSL was responsible for injuries caused by electronic products attributable to a company called Philco, which later became Philco Ford, as the result of a contract between Ford and SSL. SSL's Opposition at 2-3. The more information SSL is able to provide on this subject, the more efficient the litigation process will be.

SSL is not – of course – required to accept Plaintiffs' suggestion that it has "assumed liability for asbestos" from Philco or any other corporation or business entity. Nevertheless, where this or any other discovery request reasonably calls for this information, SSL should plainly set forth its position as to any relationship to Philco or another entity which has manufactured or sold asbestos-related or asbestos-containing products, in the form of an interrogatory response (as opposed to an indirect allusion contained within five pages of objections).

**Interrogatory No. 4: State whether you, a subsidiary, or your predecessors have at any time directly or indirectly been engaged in the mining, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, and/or otherwise placing in the stream of commerce of raw asbestos or finished asbestos products or products designed or intended to contain asbestos. If so, be specific in your answer and state or furnish as to each such asbestos product: (a) the trade name, general name and/or other identification of each such asbestos product, raw or finished: (b) the dates during which you mined, manufactured, supplied, distributed, and/or otherwise placed in the stream of commerce each such asbestos product; (c) the intended use of each such asbestos product; (d) a complete description of each such asbestos product including the type of asbestos contained therein and the percentage of asbestos contained in said product; (e) a description of the physical appearance including color of each such asbestos product specifying whether the said product was/is sold in a solid, loose, powdered or other form; (f) identify the location of each plant or facility which produces each of the aforesaid asbestos products; (g) set forth for which of the products on plaintiff's alphabetical list of Cambria Electronic (attached) are you responsible for and if any contained asbestos.**

**Response: SSL has performed a reasonable and diligent search for responsive records or information and no responsive information was obtained. On this basis, SSL responds no.**

It is unlikely that SSL does not even have any information as to whether it, in its current form, has sold or manufactured asbestos-containing products. Thus its response, though facially acceptable, may be suspect. I reiterate that vague allusions in an objection are not a substitute for a meaningful discovery response.

I will therefore direct SSL to supplement its answer to include any information it does have which would be responsive to this interrogatory. Further, if SSL has any relationship at all with an asbestos-containing product, it should so state. If it has no such relationship, this should be stated in its response.

**Interrogatory No. 6: Did you sell raw asbestos or finished asbestos products to the Navy for the Cambria or to the GE plants on Chestnut Street in Philadelphia or Valley Forge during or immediately prior to the periods of employment of plaintiff in the Navy or at GE or asbestos containing parts for RCA televisions? If yes, identify (a) dates of sales; (b) amounts of sales; (c) names of finished asbestos containing products sold; (d) amount of raw asbestos sold; Invoice records can be attached to answer this interrogatory.**

**Response: Subject to and without waiver of the above-incorporated Preliminary Statement, General Objections, Objections to Plaintiffs' Ill-Defined Term, and the foregoing objections, SSL responds as follows to the extent it understands and interprets this interrogatory: No.**

According to Plaintiffs, this interrogatory was designed to elicit information as to whether SSL "ever sold asbestos." Plaintiffs' Memorandum at 4. Clearly, the interrogatory is more limited than this, specifying sales to the Navy for the Cambria (a ship) or two specific GE plants. SSL responded: "No." Despite Plaintiffs' several pages of objections, this must be construed as an unequivocal negative; any qualification should have been set forth clearly in the response. Plaintiffs have not come forward with a reason for doubting the accuracy of this response.

**Interrogatory No. 12: Were you ever advised by any member of the medical profession or other profession such as industrial hygienists occupational hazard professionals or other persons to utilize hazard labels on your products and to give clear and explicit warnings concerning the possibility of cancer, and/or mesothelioma and/or serious illness and**

4

**diseases but not limited to asbestos [*sic* "asbestosis"?] to those who might use, handle, or be exposed to your asbestos products after they have left your control? Identify this individual or individuals or company, set forth the date of this advice, and attach copies of this advice if written.**

**Response: Subject to and without waiver of the above-incorporated Preliminary Statement, General Objections, Objection to Plaintiffs' Ill-Defined Term, and the foregoing objections, SSL responds as follows to the extent it understands and interprets this interrogatory: No.**

According to Plaintiffs, this interrogatory was designed to elicit information as to whether SSL "was advised to warn." Plaintiffs' Memorandum at 4. SSL responded: "No." This must be construed as an unequivocal negative, since any qualification should have been set forth clearly in the response. Plaintiffs have not come forward with a reason for doubting the accuracy of this response

**Interrogatory No. 13: When, if at all, did you first become aware that airborne dust containing some asbestos fibers might be created in the course of the use of your asbestos products by workers in the electrical industry or electrical or electronic equipment on ships or factory?**

**Response: Subject to and without waiver of the above-incorporated Preliminary Statement, General Objections, Objection to Plaintiffs' Ill-Defined Term, and the foregoing objections, SSL responds as follows to the extent it understands and interprets this interrogatory: SSL has no such awareness.**

Plaintiffs have not set forth a reason to disbelieve SSL's representation that it has never become aware of the danger of airborne asbestos fibers in the course of the use of its "asbestos products," if such products exist. I note that SSL's current discovery responses leave unsettled the question of whether such products do exist.

**Interrogatory 19: State whether you have received any workmen's compensation claim for injury, occupational disease, or death, to any of your employees or to any persons working as independent contractors for you, or under your direction or to any persons in "contract unites" operated by you or your subsidiaries or divisions or to any persons hired on an occasional basis by your agents, employees or directors, in the course of work activity performed by the aforementioned "contract unit" for the following diseases: asbestosis, emphysema, chronic bronchitis, pulmonary fibrosis dyspnea, carcinoma of the lungs, or mesothelioma. In answering this question confine your answer to workers who were**

**occupationally exposed to asbestos products by their using, handling, fabrication, installing, removing, mixing, butting, packing or transporting products containing any percentage whatsoever of asbestos whether raw or finished and whether made by you or made by some other company but used, handled modified, installed, removed, mixed, cut, packed or transported by the person or persons making the workmen's compensation claim for injury or unit managers or contract unit occasional workers independently contracted for. If there have been any workman's compensation claims within the above-described criteria between the years 1930 and 1978, state: (a) the date you received notice of the claim; (b) the identity of the person making the claim; or on whose behalf the claim was made; (c) the specific disease or illness complained of. In particular, all complaints of: asbestosis, emphysema, chronic bronchitis, pulmonary fibrosis, dyspnea, carcinoma of the lungs and mesothelioma; (d) the name of any physician or nurse who made any notes on the claim or who inscribed any words whatsoever on any document, paper, letter, book, or record pertaining to the evaluation of the facts and/or the merit and/or the medical workup of the claim filed; (e) a brief summary of the substance of the written materials mentioned in section (d); (f) the present location(s) of the documents, medical or otherwise, relevant to the claim filed, if any, specific [*sic "specified"?*] in section(a); (g) An index to the claim files, if any specified in section (a) showing how, if at al, they are broken down by the defendant in the ordinary course of the defendant's business activity (i.e. by geographical region, by plant, by profit center, by disease, by injury, by level of compensation demanded, by estimate on the eventual payment that will be required on the claim, by worker's name or number, by contract unit, by date, or in any other way that the defendant as a practical matter in the ordinary course of defendant's business actually breaks down and indexes the claims of the kind specified for the purpose of defendant's own internal filing and record keeping; (h) the state or federal agency or agencies which would in the ordinary course of defendant's business and in the ordinary course of the state and federal government's business receive notice of the claim; (i) the indexing or filing system used by those agencies in the respective states or in the respective federal agencies; (j) the records retention policies concerning claims of the kinds specified in this interrogatory of the defendant, and of any state agencies of which the defendant has knowledge in states where the defendant does business, and to which the defendant supplies information concerning claims of any kind. Also include any federal agencies which would receive notice directly or in the defendant's knowledge indirectly as a matter of the ordinary business of the federal government concerning claims of the aforementioned kind; (k) the disposition of said claim(s) including any benefits paid or settlements reached or moneys voluntarily paid by your insurers, if any; (l) the last known address of the attorney representing the claimant, if any.**

**Response: SSL has performed a reasonable and diligent search for responsive records or information. No records from the relevant time period are available.**

Plaintiffs have not set forth a reason to disbelieve SSL's representation that it has no available records from the time period identified in the interrogatory.

**Interrogatory No. 20:  Have you ever been named as a party in any action for workmen's compensation benefits for injury, occupational disease, or death by any of your employees or their estates, or by any persons working as independent contractors for you or under your direction or their estates, or by any directors, manager, or persons involved on a casual labor or occasional worker independently contracted for basis in "contract units" operated by your or their estates where the disease, injury or death was asserted by the Plaintiff an/or claimant in the action to be based in while or in part on the diseases: asbestosis, emphysema, chronic bronchitis, pulmonary fibrosis, dyspnea, carcinoma of the lungs, or mesothelioma and where the plaintiff and/or claimant in the course of his work experience used, handled, fabricated, installed, removed, mixed, cut, packed or transported asbestos products containing any percentage whatsoever of asbestos?  If so, state as to each claim:  (a) the identity of the plaintiff and/or claimant and the disease(s) or injury(s) on which the action was premised; (b) the date it was filed; (c) the name and address of the court, agency or administrative body in which was filed; (d); the term and/or number of the action; (e) the identity of the claimant's attorney; (f) the identity of the claimant's physician; (g) the identity of your physician and/or expert witnesses; (h) the disposition of the action including any moneys paid voluntarily or by agreement or in settlement by you or by your insurance carrier.**

**Response:  SSL is not aware of any such claim.**

Plaintiffs have not set forth a reason to disbelieve SSL's representation in this regard.

**Interrogatory No. 26:  Have you given any warnings to your employees of dangers of illness and/or disease by reason of their use, handling or exposure to asbestos products:  If so, state:  (a) the date of each such warning; (b) how such warnings were given; (c) if such warnings were oral, state the names and addresses of the person(s) giving and receiving such warnings: (d) if such warnings were written, state:  (1) the dates of such warnings; (2) the present location of such warnings; (3) the names and addresses of individuals who prepared such warnings; (4) where and/or how such warnings were posted; (5) the reasons for such warnings; (e) whether or not in the course of such warnings, there was any warning concerning the possibility of contracting the disease known as cancer resulting from the use of or exposure to the asbestos products.  In particular, whether there was any warning concerning that type of cancer known as mesothelioma.**

**Response:  SSL has performed a reasonable and diligent search for responsive records or information and no responsive information was obtained.  On this basis, SSL responds no.**

Plaintiffs have not set forth a reason to believe SSL's representation in this regard.

**Interrogatory No. 33:  Have your asbestos products at any time been subjected to: (a) tests or studies by a governmental agency; (b) tests or studies by any independent agency; (c) tests conducted on humans or animals on your behalf or on behalf of any codefendant in this action.  If your answer to any of the subsections (a) through (c) is in the affirmative, for each test or study state: (1) the date it began; (2) the date ended; (3) the procedure of the**

**test or study; (4) the number of man hours spent on it; (5) the place where it was conducted.**

**Response:  N/A.**

SSL will be directed to provide a full answer, setting forth its reason for stating that this interrogatory is "not applicable" to it.

B.      Interrogatories To Which SSL Did Not Respond

**Interrogatory No. 28:  The identification and location of all technical documents or any documents pertinent to the Electronic Equipment in Plaintiffs' exhibit captioned alphabetic list Cambria Electronic Equipment and any component thereof and including, without limitation, all circuit diagrams, parts lists, schematic diagrams, physical diagrams, mechanical and operational specifications, and training manuals describing locations of and/or use of asbestos in said listed type or style of Electronic Equipment.**

**Response:**  SSL's five pages of objections to this interrogatory can be summarized as follows: (1) the interrogatory is overbroad and seeks irrelevant material; (2) it is not limited in time; (3) it is not limited to the equipment allegedly maintained in Kraus's presence on the USS Cambria and for which Plaintiffs contend SSL may be responsible; (4) no Cambria Electronic Equipment list was attached to the interrogatories; (5) if there were such a list attached, it would be so lengthy as to exceed the number of Interrogatories permitted under Fed. R. Civ. Pr. 33(a)(1); (6) it is overly broad and harassing to the extent that it asks SSL to identify material pertaining to equipment which for which neither SSL nor "any entity for which SSL is an alleged successor" is responsible; (7) it is unintelligible; (8) it seeks information which in the public domain or "equally obtainable, if not more so, through Plaintiffs' own investigation and effort" to the extent that it refers to information which is in the control of the manufacturer of the product(s) "for which Plaintiffs allege SSL may be responsible," the alleged successors to those manufacturers, or the U.S. Navy or other governmental body that procured the products; (9) it is unreasonably cumulative and duplicative; and (10) it is objectionable on the basis of privilege and privacy "to the extent that" it seeks privileged or private material.

I will direct SSL to respond to this interrogatory, to the extent that it pertains to material for which either SSL or "any entity for which SSL is an alleged successor," including Philco, is responsible; and to the extent that the interrogatory is intelligible to SSL.  Any private or privileged material should be identified by description, and the basis for the claim of privilege shall be specified.

**Interrogatory No. 38: Did you or a predecessor or subsidiary supply the equipment manual itself or any asbestos-containing components for any of the equipment listed in the document marked 190415 alphabetic list electronic equip [*sic*] attached hereto either as original equipment or as replacement part provide or design service requiring asbestos in that equipment. If so, list:** [Plaintiffs' Exhibit M does not set forth the rest of this interrogatory].

**Response:** SSL's four pages of objections can be summarized as follows: 1) the interrogatory is overbroad and seeks irrelevant material; (2) it is not limited in time or place; (3) it is not limited to the equipment allegedly maintained in Kraus's presence on the USS Cambria and for which Plaintiffs contend SSL may be responsible; (4) the U.S. Navy supplied all of the equipment manuals for the U.S. Navy electronic equipment that was aboard the USS Cambria contemporaneously with Plaintiff, as Kraus stated in his deposition; (5) no Cambria Electronic Equipment list was attached to the interrogatories; (5) if there were such a list attached, it would be so lengthy as to exceed the number of Interrogatories permitted under Fed. R. Civ. Pr. 33(a)(1); (6) it is overly broad and harassing to the extent that it asks SSL to identify material pertaining to equipment which for which neither SSL nor "any entity for which SSL is an alleged successor" is responsible; (7) it is unintelligible; (8) it is unreasonably cumulative and duplicative.

I will direct SSL to respond to this interrogatory, to the extent that it pertains to material for which SSL is aware that Plaintiffs contend SSL may be responsible, and for which SSL or any entity for which SSL is an alleged successor is responsible; and to the extent that the interrogatory is intelligible to SSL.

**Interrogatory No. 42: Where are the documents related to the equipment [as] to which you admit liability stored or maintained?**

**Response:** SSL's objections can be summarized as follows: (1) the interrogatory is overbroad and seeks irrelevant material; (2) it is not limited in time or place; (3) that the reference to "equipment as to which you admit liability" is argumentative; (4) it is not limited to the equipment allegedly maintained in Kraus's presence on the USS Cambria and for which Plaintiffs contend SSL may be responsible; (5) it is unintelligible; (6) it seeks information which in the public domain or "equally obtainable, if not more so, through Plaintiffs' own investigation and effort" to the extent that it refers to information which is in the control of the manufacturer of the product(s) "for which Plaintiffs allege SSL may be responsible," the alleged successors to those manufacturers, or the U.S. Navy or other governmental body that procured the products; (7) "it is masquerading as a request for admission" [*sic* "a request for admission masquerading as an interrogatory;" and (8) it is objectionable on the basis of privilege and privacy "to the extent that" it seeks privileged or private material.

I will direct SSL to respond to this interrogatory with respect to any equipment as to which it does concede liability; if there is no such equipment, SSL should so state in an interrogatory response.

C.  Documents Listed in SSL's Voluntary Disclosure

Plaintiffs have alleged in their Motion to Compel that SSL wrongly refused to provide to them the documents listed in SSL's voluntary disclosure under Fed. R. Civ. Pr. 26(a)(1). However, Plaintiffs have only requested these documents informally, in a letter. Plaintiffs' Exhibit L.

Rule 26(a)(1)(A)(ii) requires a party to provide to other parties "a copy – **or** a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." (Bold supplied). Thus, the list SSL provided in its Rule 26 disclosures complies with this rule – the rule does not require that the documents be produced. See Carlton v. C.O. Pearson, Civ. A. 16-680, 2019 WL 1198604 at *3, n.3 (W.D.N.Y. Mar. 14, 2019); Forbes v. 21st Century Insurance Co., 258 F.R.D. 335, 337 (D. Ariz. 2009).

There is no basis for filing a Motion to Compel for failure to comply with an informal request for production. Plaintiffs' motion is therefore premature with respect to documents identified by SSL under Rule 26(a)(1)A)(ii), and will be denied in this respect.

D.  SSL's Statements in its Response and in its Objections

In SSL's response, and in many places in its objections to Plaintiffs' interrogatories, SSL has argued that the evidence linking it with products to which Kraus was exposed is not substantial. For example, SSL argues that "Contrary to Plaintiffs' assertion, Plaintiffs' Internet

10

Research, Plaintiffs' Chart, and Plaintiffs' "Navy" documents do not confirm that Philco manufactured or sold any of the … equipment aboard the USS Cambria contemporaneously with Plaintiff Robert Kraus's service aboard the USS Cambria" and "Plaintiff's Chart identifies entities other than Philco as to the alleged equipment." SSL's Opposition at 12-13.

At some level, this information could be called pertinent to whether the information sought by Plaintiff's is discoverable. However, due to the complexity of the matters involved, it is not self-evident that Plaintiffs are engaged in a "fishing expedition", as SSL suggests. Given the broad scope of discovery permitted by the Federal Rules of Civil Procedure,[1] it is more appropriate at this point for SSL to reply as fully to Plaintiffs' discovery as possible, in order to permit a determination at a later stage whether there is any case against SSL to be made, or not.

E.     The Relief Sought

At the end of its motion to compel, Plaintiffs ask "that Space Systems be compelled to provide proper responses to discovery and asks that the Court determine that Space Systems is liable for the old Philco products based on the contract with Ford and to disclose and provide the documents sought."

Obviously, a motion to compel discovery is not a vehicle for determining issues of liability, or for interpreting contracts. Further, although relief – including deeming matters established for purposes of the action – may be granted for a failure to comply with a court order, under Rule 37(b)(2)(A), it may not be sought in an initial motion to compel discovery.

---

[1] Federal Rule of Civil Procedure 26(b) states that, unless otherwise limited by court order, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and that "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

III.     Conclusion

For the reasons set forth above, I will enter an Order of this same date, granting Plaintiffs' Motion to Compel Discovery in part, and denying it in part, in accordance with the above Opinion.


BY THE COURT:


/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE