IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT J. KRAUS, and : CIVIL ACTION
MARGARET M. KRAUS :
:
v. :
:
ALCATEL-LUCENT, et al. : NO. 18-2119

O P I N I O N

JACOB P. HART                                                                 DATE:  9/24/2019
UNITED STATES MAGISTRATE JUDGE

In this case, plaintiffs Robert and Margaret Kraus are suing various defendants, including Space Systems/Loral, LLC ("SSL") with regard to damages Robert Kraus suffered from exposure to asbestos. Plaintiffs have filed a motion to compel discovery from Northrop Grumman Corporation, which was assigned to the undersigned by the honorable Timothy J. Savage. For the reasons set forth below, Plaintiffs' motion will be granted in part and denied in part.

I.     Applicable Legal Standards

Under Federal Rule of Civil Procedure 37, a party may move for an order compelling disclosure or discovery after conferring, or attempting to confer, with good faith with the opposing party in an attempt to obtain it without court action. F. R. Civ. Pr. 37(a)(1). Such a motion may be filed where a party fails to answer an interrogatory submitted under Rule 33, or fails to either produce documents or permit inspection, as requested under Rule 34. Id. at (a)(3)(B). Evasive or incomplete answers and responses are treated as a failure to answer or respond. Id. at (a)(4).

A party may also seek sanctions from the court where the opposing party has not obeyed a discovery order. Fed. R. Civ. Pr. 37(b)(2)(A). These may include directing that the matters embraced in the order be taken as established for purposes of the action. Id. at 7(b)(2)(A)(i).II.

II. Discussion

A. Interrogatories

**Interrogatory No. 3: Please state whether or not you are a corporation. If so, state: (a) your current corporate name; (b) the state of incorporation; (c) the date of your incorporation; (d) the address of your principal place of business; (e) the addresses of any other places of business; (f) whether or not you have ever held a certificate of authority to do business in this state (g) whether or not you have a registered agent for the purpose of accepting service in this state, and if so, the name and present address of that agent; (h) state your corporate purpose; (i) state whether or not you have or have had subsidiary or predecessor corporation(s) and/or corporations whose liabilities for asbestos you have assumed hereafter predecessor [*sic*] if so: (1) the name of each subsidiary and/or predecessor; (2) its date(s) of incorporation, if a corporation, of each such corporation; (3) state(s) of each such corporation (4) the corporate purpose of such corporation.**

Northrop Grumman has responded to all parts of this interrogatory except subsection (i). In its response to this motion, however, it states that it will respond to subsection (i) "as to Hallicrafters and Litton for the three products alleged to be at use." I will therefore direct it to respond to subsection (i).

**Interrogatory No. 4: State whether you, a subsidiary, or your predecessors have at any time directly or indirectly been engaged in the mining, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, and/or otherwise placing in the stream of commerce of raw asbestos or finished asbestos products or products designed or intended to contain asbestos. If so, be specific in your answer and state or furnish as to each such asbestos product: (a) the trade name, general name and/or other identification of each such asbestos product, raw or finished: (b) the dates during which you mined, manufactured, supplied, distributed, and/or otherwise placed in the stream of commerce each such asbestos product; (c) the intended use of each such asbestos product; (d) a complete description of each such asbestos product including the type of asbestos contained therein and the percentage of asbestos contained in said product; (e) a description of the physical appearance including color of each such asbestos product specifying whether the said product was/is sold in a solid, loose, powdered or other form; (f) identify the location of each plant or facility which produces each of the aforesaid asbestos products; (g) set forth for which of the products on plaintiff's alphabetical list of Cambria Electronic (attached) are you responsible for and if any contained asbestos.**

2

Despite having asserted a number of objections to this Interrogatory, Northrop Grumman represents in its response to Plaintiffs' motion that it "has already notified Plaintiffs that it is in the process of investigating" whether or not it has responsive materials as to the three products which have been identified by Plaintiffs as having been on board the USS Cambria, at the time during which Mr. Kraus served on this ship. These products are AN/SPS-40, AN/UPX-1, and AN/ULQ-6A.

This being the case, I will grant Plaintiff's request in this regard and direct Northrop Grumman to respond to this Interrogatory as it pertains to the three products identified by Plaintiffs. If Northrop Grumman has not yet identified any relevant material, it shall so state in a written and verified interrogatory response.

**Interrogatory No. 6: Did you sell raw asbestos or finished asbestos products to the Navy for the Cambria or to the GE plants on Chestnut Street in Philadelphia or Valley Forge during or immediately prior to the periods of employment of plaintiff in the Navy or at GE or asbestos containing parts for RCA televisions? If yes, identify (a) dates of sales; (b) amounts of sales; (c) names of finished asbestos containing products sold; (d) amount of raw asbestos sold; Invoice records can be attached to answer this interrogatory.**

Similarly, despite having asserted a number of objections to this Interrogatory, Northrop Grumman represents in its response to this motion that it "has already notified Plaintiffs that it is in the process of investigating" whether or not is has responsive materials as to the three products which have been identified by Plaintiffs as having been on board the USS Cambria, at the time during which Mr. Kraus served on this ship.

Again, I will grant Plaintiff's request in this regard and direct Northrop Grumman to respond to this Interrogatory as it pertains to the three products identified by Plaintiffs. If Northrop Grumman has not yet identified any relevant material, it shall so state in a written and verified interrogatory response.

**Interrogatory No. 12: Were you ever advised by any member of the medical profession or other profession such as industrial hygienists occupational hazard professionals or other persons to utilize hazard labels on your products and to give clear and explicit warnings concerning the possibility of cancer, and/or mesothelioma and/or serious illness and diseases but not limited to asbestos [*sic* "asbestosis"?] to those who might use, handle, or be exposed to your asbestos products after they have left your control? Identify this individual or individuals or company, set forth the date of this advice, and attach copies of this advice if written.**

Northrop Grumman objected to this interrogatory on the bases that (a) it is overly broad; (b) there is an absence of product identification evidence which would tie Mr. Kraus on a Northrop Grumman product; (c) Norden Systems, an alleged predecessor of Northrop Grumman, did make the AN/SPS40B radar, but it was not installed on Navy vessels until 1971, four years after Mr. Kraus left the Navy, and one year after the USS Camden was decommissioned. It added, however, that "investigation was continuing."

In its Amended Supplemental Response to Plaintiffs' motion to compel, Northrop Grumman now concedes that Plaintiffs' claim against it is now focused on AM-1365/URT; AN/ULQ-6A; and AN/UPX-1. Amended Supplemental Response at 3. Therefore, the interrogatory does not now appear overbroad. Also, the objection regarding the AN/SPS40B is no longer relevant.

The issue of product identification is somewhat more complex. Plaintiffs motion to compel discovery relied heavily upon the anticipated testimony of Joe Landrum and Roger Gossett, which they argued would demonstrate that Kraus was exposed to products on the USS Camden which either contained asbestos, or were repaired with asbestos. These depositions occurred on August 13 and 20, 2019, during the pendency of this motion.

According to Northrop Grumman, neither Landrum nor Gossett "provided the promised testimony", so that there is "zero evidence" that Mr. Kraus ever encountered the three products identified. Amended Supplemental Response at 2 and 3.

4

However, Landrum confirmed that, although Mr. Kraus had no "hands-on" work on any radar equipment, Mr. Kraus's job took him to every part of the ship, and he "would be called in when he didn't understand what work we were doing, and he needed to be brought up to speed so he could tell someone else." Joe Landrum Deposition Excerpt, attached to Northrop Grumman's Amended Supplemental Response as Exhibit H, at 167-8. Landrum was not able to remember the identification numbers for any equipment present on the ship.

Gossett, like Landrum, had no specific memory of seeing Mr. Kraus with any equipment, but he did testify that:

> If somebody is working on a piece of equipment … and its going to take him two hours, Mr. Kraus might have been there for five or ten minutes of that two hours. So I cannot specifically say yes or no, he was there or he was not there. There was a good probability that he was there some of the time.

Roger Gossett Deposition Excerpt, attached to Northrop Grumman's Amended Supplemental Response as Exhibit I, at 257. Gossett also testified that there was an AM-1365 and an UPX-1 on the ship. Id. at 258 and 259.

It is far from clear that this product identification evidence is sufficient to obtain a verdict, or even to survive summary judgment. As this stage, however, it sufficiently suggests that Mr. Kraus might have been in the presence of asbestos-containing products to warrant permitting further discovery. In accordance with the above, I will direct Northrop Grumman to respond to Interrogatory No. 12.

**Interrogatory No. 13: When, if at all, did you first become aware that airborne dust containing some asbestos fibers might be created in the course of the use of your asbestos products by workers in the electrical industry or electrical or electronic equipment on ships or factory?**

In its interrogatory responses, and in its responses to this motion, Northrop Grumman has made the same objections with regard to Interrogatory No. 13 as he has to No. 12. As discussed

5

above, I have determined that the product identification evidence put forward by Plaintiffs is enough to permit discovery to continue. I will therefore direct Northrop to respond to this interrogatory.

**Interrogatory 19: State whether you have received any workmen's compensation claim for injury, occupational disease, or death, to any of your employees or to any persons working as independent contractors for you, or under your direction or to any persons in "contract unites" operated by you or your subsidiaries or divisions or to any persons hired on an occasional basis by your agents, employees or directors, in the course of work activity performed by the aforementioned "contract unit" for the following diseases: asbestosis, emphysema, chronic bronchitis, pulmonary fibrosis dyspnea, carcinoma of the lungs, or mesothelioma. In answering this question confine your answer to workers who were occupationally exposed to asbestos products by their using, handling, fabrication, installing, removing, mixing, butting, packing or transporting products containing any percentage whatsoever of asbestos whether raw or finished and whether made by you or made by some other company but used, handled modified, installed, removed, mixed, cut, packed or transported by the person or persons making the workmen's compensation claim for injury or unit managers or contract unit occasional workers independently contracted for. If there have been any workman's compensation claims within the above-described criteria between the years 1930 and 1978, state: (a) the date you received notice of the claim; (b) the identity of the person making the claim; or on whose behalf the claim was made; (c) the specific disease or illness complained of. In particular, all complaints of: asbestosis, emphysema, chronic bronchitis, pulmonary fibrosis, dyspnea, carcinoma of the lungs and mesothelioma; (d) the name of any physician or nurse who made any notes on the claim or who inscribed any words whatsoever on any document, paper, letter, book, or record pertaining to the evaluation of the facts and/or the merit and/or the medical workup of the claim filed; (e) a brief summary of the substance of the written materials mentioned in section (d); (f) the present location(s) of the documents, medical or otherwise, relevant to the claim filed, if any, specific [*sic "specified"?*] in section(a); (g) An index to the claim files, if any specified in section (a) showing how, if at al, they are broken down by the defendant in the ordinary course of the defendant's business activity (i.e. by geographical region, by plant, by profit center, by disease, by injury, by level of compensation demanded, by estimate on the eventual payment that will be required on the claim, by worker's name or number, by contract unit, by date, or in any other way that the defendant as a practical matter in the ordinary course of defendant's business actually breaks down and indexes the claims of the kind specified for the purpose of defendant's own internal filing and record keeping; (h) the state or federal agency or agencies which would in the ordinary course of defendant's business and in the ordinary course of the state and federal government's business receive notice of the claim; (i) the indexing or filing system used by those agencies in the respective states or in the respective federal agencies; (j) the records retention policies concerning claims of the kinds specified in this interrogatory of the defendant, and of any state agencies of which the defendant has knowledge in states where the defendant does business, and to which the defendant supplies information concerning claims of any kind. Also include any federal agencies which would receive notice directly or in the**

defendant's knowledge indirectly as a matter of the ordinary business of the federal government concerning claims of the aforementioned kind; (k) the disposition of said claim(s) including any benefits paid or settlements reached or moneys voluntarily paid by your insurers, if any; (l) the last known address of the attorney representing the claimant, if any.

Northrop Grumman objects to this interrogatory for a number of reasons, including that it is not reasonably calculated to lead to the discovery of admissible evidence because Plaintiffs have not alleged that Mr. Kraus was ever employed by Northrop Grumman or worked at a Northrop Grumman facility. I agree. Plaintiffs' motion will be denied regarding this interrogatory.

**Interrogatory No. 20: Have you ever been named as a party in any action for workmen's compensation benefits for injury, occupational disease, or death by any of your employees or their estates, or by any persons working as independent contractors for you or under your direction or their estates, or by any directors, manager, or persons involved on a casual labor or occasional worker independently contracted for basis in "contract units" operated by your or their estates where the disease, injury or death was asserted by the Plaintiff an/or claimant in the action to be based in while or in part on the diseases: asbestosis, emphysema, chronic bronchitis, pulmonary fibrosis, dyspnea, carcinoma of the lungs, or mesothelioma and where the plaintiff and/or claimant in the course of his work experience used, handled, fabricated, installed, removed, mixed, cut, packed or transported asbestos products containing any percentage whatsoever of asbestos? If so, state as to each claim: (a) the identity of the plaintiff and/or claimant and the disease(s) or injury(s) on which the action was premised; (b) the date it was filed; (c) the name and address of the court, agency or administrative body in which was filed; (d); the term and/or number of the action; (e) the identity of the claimant's attorney; (f) the identity of the claimant's physician; (g) the identity of your physician and/or expert witnesses; (h) the disposition of the action including any moneys paid voluntarily or by agreement or in settlement by you or by your insurance carrier.**

Again, this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence because Plaintiffs have not alleged that Mr. Kraus was ever employed by Northrop Grumman or worked at a Northrop Grumman facility. Plaintiffs' motion will be denied regarding this interrogatory.

**Interrogatory No. 22: If you or your insurance carrier have ever paid out money as a result of a court decree or jury verdict against you in a case in which the plaintiff asserted injury resulting from exposure to asbestos products mixed, manufactured, produced, processed, compounded, converted, sold, merchandised, supplied, or place[d] in the stream of commerce identify the (a) court in which judgment was entered against you; (b) court docket number; (c) plaintiff's name; (d) plaintiff's attorney's name and address; (e) amount of judgment; (f) date judgment entered; and (g) other defendants against whom judgment was entered.**

As above, I do not agree with Northrop Grumman that Plaintiffs' product identification evidence is so weak as to preclude discovery from going forward. I agree, however, that this interrogatory is overly broad. I will instruct Northrop Grumman to respond to this interrogatory, but only as it pertains to AM-1365/URT; AN/ULQ-6A; and AN/UPX-1.

**Interrogatory No. 23**: Although Plaintiffs, in their motion, seek to compel a response to Interrogatory No. 23, the interrogatories served upon Northrop Grumman did not include an Interrogatory No. 23. Plaintiffs' motion will therefore be denied in this regard.

**Interrogatory No. 25: Did or does defendant maintain a medical library? If so, state: (a) date established; (b) location; (c) names and addresses of librarians; (d) title, author, and publisher of all journals and books bought or subscribed to during the period of 1930 through 1978; (e) to whom journals in the area of asbestos, industrial hygiene, medicine safety or engineering were distributed.**

Northrop Grumman has objected to this interrogatory on the ground that it is unduly broad and response would be unduly burdensome. It also cites the alleged weakness in Plaintiffs' product identification testimony. Although the question is clearly relevant to the notice Northrop Grumman may have had as to the dangers of asbestos exposure, I agree that subsection (d) in particular is immensely broad and would be unduly burdensome to research. In addition, the response to subsection (e) is unduly broad to the extent that it may seek the names of specific individuals.

I will direct Northrop Grumman to respond to all subsections of this interrogatory other than (d), and instruct it that it may answer subsection (e) in general terms.

**Interrogatory No. 26: Have you given any warnings to your employees of dangers of illness and/or disease by reason of their use, handling or exposure to asbestos products: If so, state: (a) the date of each such warning; (b) how such warnings were given; (c) if such warnings were oral, state the names and addresses of the person(s) giving and receiving such warnings: (d) if such warnings were written, state: (1) the dates of such warnings; (2) the present location of such warnings; (3) the names and addresses of individuals who prepared such warnings; (4) where and/or how such warnings were posted; (5) the reasons for such warnings; (e) whether or not in the course of such warnings, there was any warning concerning the possibility of contracting the disease known as cancer resulting from the use of or exposure to the asbestos products. In particular, whether there was any warning concerning that type of cancer known as mesothelioma.**

Northrop Grumman objected to this interrogatory as overly broad, since it is not limited to the products, locations, time-frame, alleged disease, or issues involved in this litigation. It also argues that Plaintiffs' product identification information is inadequate to support further discovery. I disagree, and will direct Northrop Grumman to respond to this interrogatory, which is clearly designed to obtain information regarding its knowledge of the dangers of asbestos exposure.

**Interrogatory No. 28: The identification and location of all technical documents or any documents pertinent to the Electronic Equipment in Plaintiffs' exhibit captioned alphabetic list Cambria Electronic Equipment and any component thereof and including, without limitation, all circuit diagrams, parts lists, schematic diagrams, physical diagrams, mechanical and operational specifications, and training manuals describing locations of and/or use of asbestos in said listed type or style of electronic equipment.**

In response to this interrogatory, Northrop Grumman has written: "Northrop Grumman incorporates by reference its responses and objections to Interrogator[ies] 4 and 6 above." Presumably, this includes the representation set forth in those responses that Northrop Grumman is in the process of investigating whether or not it has responsive materials as to the three products which have been identified by Plaintiffs as having been on board the USS Cambria, at the time during which Mr. Kraus served on this ship. Accordingly, I will direct Northrop Grumman to respond to this interrogatory as it pertains to the three products identified by

Plaintiffs. If Northrop Grumman has not yet identified any relevant material, it shall so state in a written and verified interrogatory response.

**Interrogatory No. 34: Have you at any time, been a member of any "trade association or organization" composed of other miners, manufacturers, suppliers, distributors, producers, processors, compounders, converters, sellers, merchandisers, and/or anyone otherwise placing in the stream of commerce asbestos products? If so, state: (a) identify each such association or organization; (b) the dates during which you were a member; (c) the names of any publication published by or written by such association or organization; (d) the dates and addresses of all other members; (e) what meetings you attended and identify who attended; (f) who spoke at such meetings; (g) whether transcripts or summaries or minutes or notes were made of such meetings. If so, identify the above, tell specifically what was made and give the name, title and address of the person or persons who have custody of the transcripts and/or summaries and/or minutes and/or notes mentioned above and state when and where counsel for the plaintiff may examine and copy these documents.**

Northrop Grumman objected that "it would be virtually impossible for it to identify all of its present or former employees" who were members of any trade association or organization. It would also appear almost impossible to identify all meetings, and the speakers at those meetings.

Nevertheless, Northrop Grumman shall respond to this interrogatory to the extent that it shall provide a list of any trade association or organization to which it or a predecessor – as a corporate or business entity – (and not its individual employees) was a member, between 1950 and 1967. The latter date is based on Plaintiffs' allegation that Mr. Kraus served aboard the USS Cambria between 1964 and 1967. The earlier date gives a reasonable window of time for Plaintiffs to investigate whether Northrop Grumman's membership in a trade association or organization is relevant to their action.

**Interrogatory No. 35: Have you, at any time, been a member of and/or contributed to the Industrial Hygiene Foundation: If so, state: (a) the dates you were a member and/or contributed; (b) the identification of any publication of any such organization; (c) what meetings you attended and who attended; (d) who spoke at such meetings; (e) whether transcripts or summaries or minutes or notes were made of such meetings. If so, identify the above, tell specifically what was made and give the name, title and address of the person or persons who have custody of the transcripts and/or summaries and/or minutes**

**and/or notes mentioned above and state when and where counsel for the plaintiff may examine and copy these documents.**

Northrop Grumman shall respond to this interrogatory only insofar as to state whether it, or a predecessor (as opposed to its employees), was a member of the Industrial Hygiene foundation between the years 1950 and 1967.

**Interrogatory No. 37: Are you or a predecessor responsible for any of the following equipment including asbestos design or requirement on the Cambria or for supplying asbestos-containing components for any of these pieces of equipment? If so, please initial or check off which one or ones: [Twenty-nine pieces of equipment are then listed].**

Northrop Grumman has objected to this interrogatory on a number of bases, but writes that it is "in the process of investigating whether or not it has documents or other information in its possession as to the three products Plaintiffs believe were on the ship." As such, I will direct Northrop Grumman to respond to this interrogatory as it pertains to the three products identified by Plaintiffs. If Northrop Grumman has not yet identified any relevant material, it shall so state in a written and verified interrogatory response.

**Interrogatory No. 38: Did you or a predecessor or subsidiary supply the equipment manual itself or any asbestos-containing components for any of the equipment listed in the document marked 190415 alphabetic list electronic equip attached hereto either as original equipment or as replacement part provide or design service requiring asbestos in that equipment. If so, list:** [The interrogatory ends here].

Northrop Grumman has objected to this interrogatory as incomprehensible, particularly since nothing was attached to it. However, Northrop Grumman noted that it was "in the process of investigating whether or not it has documents or other information in its possession as to the three products Plaintiffs believe were on the ship." I will direct Northrop Grumman to respond to this interrogatory as it pertains to the three products identified by Plaintiffs, and to the extent it understands this interrogatory. If Northrop Grumman has not yet identified any relevant material, it shall so state in a written and verified interrogatory response.

11

**Interrogatory No. 42: Where are the documents related to the equipment [as] to which you admit liability stored or maintained?**

Similarly, Northrop Grumman has objected to this interrogatory, but also noted that it is in the process of investigating whether or not it has documents or other information in its possession as to the three products Plaintiffs believe were on the ship." I will therefore direct Northrop Grumman to respond to this interrogatory as it pertains to those three products. If Northrop Grumman has not yet identified any responsive material, it shall so state in a written and verified interrogatory response. In its response, Northrop Grumman shall also specify whether it admits liability as to any product.

B.	Requests for Production of Documents

**Request No. 1: All documents which evidence relations between and/or among or to the following companies and your responsibility for former Norden & Hallicrafters and Litton Systems products.**

Northrop Grumman state in its initial response to Plaintiffs' motion: "While Northrop Grumman maintains that this discovery request is premature because Plaintiffs still have not put forth any product identification testimony as to Northrop Grumman, as requested, it will respond to Interrogatory No. 3(i) on this issue but, until Plaintiffs provide product identification testimony, the Request for Production of Documents on this issue should be denied for all of the reasons stated above." Response at 18. In its amended supplemental response it maintains (as discussed above) that the product identification evidence is not adequate to justify discovery responses.

As is also discussed above, I have concluded that Plaintiffs' product identity evidence is sufficient at this stage to warrant discovery. Further, since Northrop Grumman has agreed to respond to Interrogatory 3(i), it should provide the supporting documentary evidence which is

sought in this request. I will therefore direct it to do so. If Northrop Grumman has not yet identified any responsive material, it should so state in a written and verified response.

**Request No. 2: All documents which evidence your relation to the following Navy products: AN/SPS-40, AN/UPX-1, AN/ULQ-6A.**

**Request No. 3: All documents which show you or your predecessor(s) sold any of the products listed in #2 supra to the Navy and/or for the USS Cambria.**

**Request No. 4: All documents which show you or your predecessor sold replacement parts to the Navy and/or for the USS Cambria.**

**Request No. 5: All documents which list the suppliers of component parts to you for incorporation into the products listed in #2 supra or #4 supra e.g. Vulkene or Deltabeston wire or Rosite.**

**Request No. 6: All documents which reference asbestos content in any of the products listed in #2 supra or in components listed in #4 supra or #5 supra.**

**Request No. 7: All depositions which discuss the products or components listed in #2, #4 or #5 supra.**

**Request No. 8: All documents demonstrating when you or your predecessors knew asbestos was hazardous.**

In its response to Plaintiffs' motion, Northrop Grumman has treated all of these requests for documents together. It objects to them on a number of bases, but adds that it "has already notified Plaintiffs that it is in the process of investigating whether or not it has documents or other information in its possession as to these three identified products." It has also added that it has not been able to locate the requested information as to these products. I will therefore direct Northrop Grumman to respond to these requests, and if it has not yet identified any responsive information, it shall so state in a written and verified response.

**Request No. 9: All documents showing [the] Navy barred you from warning of hazards of asbestos.**

Northrop Grumman originally responded that this request was irrelevant, overly broad, unduly burdensome, harassing, and beyond the permissible scope of discovery. This does not appear to be the case. In its response to Plaintiffs' motion, Northrop Grumman's objection is based on the lack of product identity evidence. As above, I have found that discovery responses will not be rendered unnecessary on that basis. I will direct Northrop Grumman to respond to this request. If it has not identified any responsive material, it shall so state in a written and verified response.

**Request No. 10: All tests for asbestos dust levels from your or your predecessor(s) products.**

This request is overly broad. However, I will direct Northrop Grumman to respond to this request as it pertains to AN/SPS-40, AN/UPX-1, and AN/ULQ-6A.

**Request No. 11: All tests for asbestos dust levels in the factories where you or your predecessors manufactured the products listed in #2 or #4 and #5, supra.**

I agree with Northrop Grumman that this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence, since Mr. Kraus in not alleged ever to have worked at a Northrop Grumman factory.

**Request No. 12: All documents concerning work by your civilian employees on the USS Cambria at sea or at the Philadelphia Navy Yard during the repairs of the USS Cambria at the Philadelphia Naval Ship Yard or Norfolk Naval Base.**

Now that the Landrum and Gossett depositions have provided evidence that Mr. Kraus had contact with civilians who worked on AN/SPS-40, AN/UPX-1, and AN/ULQ-6A, there is a basis for this request. It is not clear from the evidence or from Northrop Grumman's discovery responses who employed these civilians.

However, in its original response to this request, Northrop Grumman appeared to construe this as referring to civilians who "were performing work on a product attributable to Northrop Grumman." Plaintiffs' Exhibit 1 at 35. Employing this definition, I will direct Northrop Grumman to respond to this request.

III. Conclusion

For the reasons set forth above, I will enter an Order of even date, granting Plaintiffs' Motion to Compel in part, and denying it is part, and directing Northrop Grumman to respond to certain discovery requests as described in this Opinion.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE