IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT J. KRAUS and MARGARET M. KRAUS, h/w<br><br>Plaintiffs,<br><br>v.<br><br>ALCATEL LUCENT, et al.,<br><br>Defendants. | Civil Action No.: 2:18-cv-02119-TJS |

**DEFENDANT SPACE SYSTEM/LORAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT WITNESS DR. ARTHUR FRANK**

## I. INTRODUCTION AND BACKGROUND

Defendant Space Systems/Loral LLC ("SSL") respectfully requests that the Court exclude Plaintiffs' expert witness, Dr. Arthur Frank, under Federal Rules of Evidence ("FRE") 702, 703, and 403 and under *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993). Dr. Frank opines that, during Plaintiff Robert Kraus's Naval service aboard the USS *Cambria* between 1964 and 1967, Mr. Kraus was exposed to asbestos in electronic equipment for which Plaintiffs claim SSL is responsible. Dr. Frank further opines that any and all of Mr. Kraus's asbestos exposures above background constituted substantial contributing factors to the development of Mr. Kraus's mesothelioma. Finally, Dr. Frank refuses to explain or comment upon the hypothetical questions that he anticipates from Plaintiffs' counsel at trial.

Dr. Frank's opinions should be excluded for lack of scientific (or any legally cognizable) basis because Dr. Frank: (1) relies, for his opinion concerning exposure, solely upon a summary prepared by Plaintiffs' counsel that fails to address or refer to any actual evidence; (2) fails to identify a single study regarding the products at issue or alleged exposure type at issue; and (3)

fails to identify any peer-reviewed literature for Dr. Frank's signature theory that any exposure above background is a substantial contributing factor to the development of mesothelioma.

## II. FACTS

### A. Dr. Frank Admits That He Has No Basis For His Opinions that Mr. Kraus was exposed to Asbestos from Shipboard Electronic Equipment

Dr. Frank attested in his written declaration that:

- "Mr. Kraus was exposed to asbestos on electronic equipment while serving in the United States Navy aboard the USS Cambria between 1964-1967." (Decl. Jarred M. Conforte ("Conforte Decl."), ¶ 2 **Ex. 1** at 1.)

- "Based upon [Dr. Frank's] review of the materials sent to [him], it is [his] opinion, held with a reasonable degree of medical certainty, that Mr. Kraus developed a malignant pleural mesothelioma as a result of his exposures to asbestos. This would have included his exposures while serving in the United States Navy, including his time in drydock at the Philadelphia Naval Shipyard[.]" (*Id.*)

Plaintiffs' counsel sent materials to Dr. Frank, as referenced in his written declaration above, including a document entitled "Robert J. Kraus Summary." (*Id.* ¶ 3 **Ex. 2**) Dr. Frank admitted at deposition that his written opinion that "Mr. Kraus was exposed to asbestos on electronic equipment" aboard the USS Cambria was simply copied and pasted from the "Robert J. Kraus Summary" that Plaintiffs' counsel prepared and sent to Dr. Frank. (*Id.* ¶ 4 **Ex. 3** at 31:3–32:1.)

When asked about specific co-defendants that allegedly manufactured shipboard equipment at issue in this case, Dr. Frank first admitted that he had not "seen any evidence that there was actually any" aboard the USS *Cambria*. (*Id.* at 32:7–33:5). Dr. Frank then admitted that his testimony would be the same "with respect to all of the other defendants in this case." (*Id.* 33:6–10.)

Dr. Frank also admitted the following:

- Dr. Frank does "not know or have any personal knowledge of any of the material composition of the . . . electronic parts in this case[,]" including radar and radios. (*Id.* at 186:18–187:4.)

- Dr. Frank "know[s] nothing about any of the equipment on the Cambria." (*Id.* at 187:12–15.)

2

- Dr. Frank cannot say "any of the details about how Mr. Kraus was supposedly exposed to asbestos on electronic equipment while serving in the U.S. Navy[.]" (*Id*. at 33:18–34:2.)

### B. Dr. Frank Opines That Every Exposure to Asbestos Above Background Serves as a Significant Factor In the Development of Mesothelioma

Dr. Frank attested in his written declaration that:

- "The cumulative exposures that [Mr. Kraus] had to asbestos, from any and all products, containing any and all fiber types, would have contributed to his developing this malignancy." (*Id*. ¶ 2 **Ex. 1** at 2.)

Dr. Frank opined at his deposition that "every exposure that is above background is a significant factor in the development of mesothelioma[.]" (*Id*. ¶ 4 **Ex. 3** at 44:12–22.) With respect to this position, Dr. Frank admitted that he could not identify "any peer-reviewed literature" for his theory that "any exposure above background, no matter how small . . . is going to be a substantial contributing factor in causing Mr. Kraus's mesothelioma." (*Id*. at 44:23–45:20.)

### C. Dr. Frank Expects to Be Asked Hypotheticals "at Trial" Regarding Exposure Evidence

Dr. Frank attested in his written declaration that:

- "[Dr. Frank] will not discuss in [his] report [his] views on specific asbestos-containing products." (*Id*. ¶ 2 **Ex. 1** at 2.)

Dr. Frank indicated multiple times throughout his deposition testimony that he expects "to be provided hypothetical questions about the exposures to specific types of asbestos containing products" and opine based on said hypotheticals. (*See, e.g.*, *id*. ¶ 4 **Ex. 3** at 41:4–11.)

### III.   ARGUMENT

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if," *inter alia*, "the testimony is the product of reliable principles and methods[ ] and ... the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert's opinions must be "of the type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703.

Additionally, expert testimony must satisfy the two-part test set forth in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993). Part one requires a judicial determination of whether the proffered expert's testimony constitutes scientific knowledge, or is reliable. *Id*. at 610. The Court identified four factors for determining whether an opinion constitutes scientific knowledge: (1) ability to test the theory ("testability"); (2) peer review and publication ("peer review"); (3) known or potential rate of error ("error rate"); and (4) extent of acceptance ("general acceptance"). *Id.* at 593, 594. Then, only if the expert's testimony is determined to reflect scientific knowledge, the court must ensure that the proffered testimony aids the jury, or relevant (the "fit" requirement). *Id*. at 591. Thus, under *Daubert* and Rule 702, for an expert's testimony to be admissible, the court must determine the proffered testimony to be both reliable and relevant.

Plaintiffs proffer Dr. Frank in an attempt to prove specific causation. Plaintiffs hope to present the opinions of Dr. Frank to a jury to establish that: 1) Mr. Kraus actually encountered asbestos from a product for which SSL allegedly is responsible, and 2) some unknown type of exposure to an unquantified amount of asbestos during undefined conditions resulted in Mr. Kraus's mesothelioma. Dr. Frank's testimony in this matter should be excluded under Federal Rules of Evidence 702, 703, and *Daubert* for lack of scientific validity and under Federal Rule of Evidence 403 because any probative value of Dr. Frank's opinions is substantially outweighed by the danger of unfair prejudice to SSL.

### A. Dr. Frank's Opinions Lack Scientific Validity and Do Not Constitute Scientific Knowledge

In this case, Dr. Frank's specific causation opinions are not "the product of reliable principles and methods" under Rule 702. Dr. Frank's opinions likewise are not "of the type reasonably relied upon by experts in the particular field" under Rule 703. Finally, Dr. Frank's opinions do not satisfy the "testability," "peer review," "error rate," and "general acceptance" *Daubert* factors for scientific knowledge.

### 1. Dr. Frank's Asbestos Exposure Opinions Are Not Based on Scientific Knowledge or the Application of Reliable Scientific Principles or Methods

When an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony. *See Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir.1999) ("[A] district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used."). Rule 703 in turn provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

For example, in *Schindler v. Dravo Basic Materials Company*, the plaintiff sought to introduce specific causation testimony of its retained occupational and environmental health expert that plaintiff's "mesothelioma is a result of cumulative exposure to asbestos from 1955 to 1988." CV 17-13013, 2019 WL 446567, at *3 (E.D. La. Feb. 5, 2019), *aff'd*, 19-30126, 2019 WL 5783324 (5th Cir. Nov. 5, 2019). The expert's statement in his report that, in 1973, plaintiff "worked under asbestos insulated pipes that vibrated, depositing asbestos containing dust on and in close proximity" came directly from a sentence in plaintiff's sworn interrogatories. *Id*. at *4. This was "one sentence in a larger section recounting plaintiff's work history." *Id*. Holding the expert's opinion inadmissible under FRE 702, the district court noted that the "lone sentence" did not allow the expert to make "a sufficiently reliable estimate about the amount, duration, or frequency of plaintiff's alleged exposures." *Id*. at *5.

Here, as in *Schindler*, in support of Dr. Frank's opinion that Mr. Kraus was exposed to asbestos "on electronics equipment . . . while aboard the USS *Cambria*," Dr. Frank admitted that he simply copied and pasted a statement from a summary that Plaintiffs' counsel prepared. (Conforte Decl. ¶ 4 **Ex. 3** at 31:3–32:1.) Otherwise, Dr. Frank does "not know or have any personal knowledge of any of the material composition of the . . . electronic parts in this case[.]" (*Id*. at 186:18–187:4.) Independently, Dr. Frank "know[s] nothing about any of the equipment on the Cambria." (*Id*. at 187:12–15.) The summary that Plaintiffs' counsel prepared and Dr.

5

Frank cut and pasted into his report does not constitute scientific knowledge and is inherently flawed for the following reasons:

1. Plaintiffs have no evidence that any of the *Cambria* shipboard electronic equipment allegedly encountered by Mr. Kraus contained asbestos;

2. Plaintiffs have no evidence that Mr. Kraus encountered any electronic equipment that was installed originally aboard the *Cambria* or supplied as a replacement part by SSL; and

3. Plaintiffs have no evidence that Mr. Kraus performed any particular repair or maintenance, or was in proximity to others performing any particular repair or maintenance, to any asbestos-containing *Cambria* shipboard electronic equipment and therefore cannot prove that any repair or maintenance performed on *Cambria* shipboard electronic equipment released any respirable asbestos fibers.[1]

Dr. Frank's reliance upon a summary prepared by Plaintiffs' counsel—which is not evidence—that fails to address or refer to **any** evidence does not satisfy the requirements of Rule 702, Rule 703 or *Daubert's* "scientific knowledge" standard. Dr. Frank failed to identify a single study involving bystander exposure to any shipboard electronic equipment, let alone the shipboard electronic equipment at issue in this case. After acknowledging that Mr. Kraus "did not perform any work on any of the equipment" on the USS *Cambria*, Dr. Frank then admitted that he had "not seen any data regarding electronics material officers[.]" (Conforte Decl. ¶ 4 **Ex. 3** at 32:2–6; 35:18–20.) *See, e.g.*, *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198-99 (5th Cir. 1996) (finding that expert opinion failed to satisfy Fed. R. Evid. 703 because expert's "background information concerning [plaintiff's exposure was] so sadly lacking as to be mere guesswork").

In sum, Plaintiffs cannot establish that Dr. Frank's testimony is the product of reliable principles and methods or that Dr. Frank reliably applied scientific principles and methods to the facts of this case so as to opine in any regard as to Mr. Kraus's exposure to asbestos. Fed. R.

---

[1] *See* SSL's Motion for Summary Judgment [ECF 487].

Evid. 702.  Likewise, Plaintiffs cannot establish that Dr. Frank's opinions regarding exposure, based solely upon a flawed and wholly unsupported summary by Plaintiffs' counsel, are of the type reasonably relied upon by experts in Dr. Frank's particular field (or any field).  Fed. R. Evid. 703.  Finally, Plaintiffs make no attempt to meet the "testability," "peer review," "error rate," and "general acceptance" *Daubert* factors that must be satisfied before Dr. Frank may opine on asbestos exposure.

### 2. Dr. Frank's "Any Exposure Theory" Is Not Based on Scientific Knowledge or the Application of Reliable Scientific Principles or Methods

"Opinions based on the 'cumulative exposure' or 'each and every exposure' theory have been repeatedly excluded by those courts that have considered its admissibility under Rule 702 of the Federal Rules of Evidence and *Daubert* ...."  *Rockman v. Union Carbide Corp.*, 266 F. Supp. 3d 839, 849 (D. Md. 2017); *see also Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 848 (E.D.N.C. 2015) (excluding expert testimony pertaining to the "each and every exposure" theory); *Barabin v. Scapa Dryer Fabrics, Inc.*, No. C07-1454JLR, 2018 WL 840147, at *7 (W.D. Wash. Feb. 12, 2018) ("The court agrees with this overwhelming precedent that the 'every exposure' theory is unreliable."); *Kirk v. Crane. Co., et al.*, No. 1:10-cv-07435 (N.D. Ill. December 22, 2014).  In *Lindstrom v. A-C Prod Liability Trust*, 424 F.3d 488 (6th Cir. 2005) *abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries*, 139 S.Ct. 986 (2019), the trial court had rejected the opinion of the plaintiff's expert, Dr. Corson, that "[e]ach of [plaintiff's] occupational exposures to asbestos aboard a ship to a reasonable degree of medical certainty were a substantial contributing factor to his development of mesothelioma."  *Id.* at 493 (quoting affidavit).  The Sixth Circuit affirmed the trial court's ruling, noting that "a holding to the contrary would permit imposition of liability on the manufacturer of any product with which a worker had the briefest of encounters."  *Id.*

> Minimal exposure to a defendant's product is insufficient. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient.  Rather, where a plaintiff relies on proof of exposure to establish that a product was a substantial factor in causing injury, the plaintiff

7

> must show a high enough level of exposure that an inference that
> the asbestos was a substantial factor in the injury is more than
> conjectural.

*Id.*

*Lindstrom*'s rejection of the "every exposure" theory has been reaffirmed in subsequent decisions applying maritime law. *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1177 (9th Cir. 2016) (citing to *Lindstrom* and rejecting plaintiff's reliance on expert testimony which "did not speak to the severity of [the decedent's] own asbestos exposure beyond the basic assertion that such exposure was significantly above ambient asbestos levels," and "did not speak to the severity of [the plaintiff's] exposure to [the defendant's product]"); *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 677–78 (7th Cir. 2017) (citing *Lindstrom* to reject plaintiff's reliance on the "every exposure" theory); *see also Mortimer v. A.O. Smith Corp.*, 2015 WL 1606149, at *1 (E.D. Pa. Jan. 6, 2015) (relying on *Lindstrom* to set forth the standard for causation under maritime law).

In this case, as demonstrated above, Dr. Frank has no basis for opining on exposure and no independent information about exposure. Dr. Frank admitted that he could not identify "any peer-reviewed literature" for his theory that "any exposure above background, no matter how small . . . is going to be a substantial contributing factor in causing Mr. Kraus's mesothelioma." (Conforte Decl. ¶ 4 **Ex. 3** at 44:23–45:20.) Indeed, Dr. Frank's opinion treats all exposures the same, with no reference to frequency, duration or proximity of the exposure. Dr. Frank makes no attempt to differentiate products, manufacturers, timeframes, job assignments and duties, and bystander versus direct exposure. Thus, Dr. Frank's opinion is not based on scientific knowledge or the application of scientific principles or methods to the facts of this case. Again, Plaintiffs make no attempt to establish that Dr. Frank's theory is accepted within his scientific community and no attempt to satisfy the *Daubert* factors required for the admissibility of expert testimony.

### 3. Dr. Frank's Opinions Fail the "Fit" Requirement

Even assuming that Dr. Frank's testimony reflects scientific knowledge and is reliable under Daubert (which it is not), it nevertheless fails to advance a material aspect of the case, does

not aid the jury, and must be excluded as irrelevant. In other words, Dr. Frank's opinions do not meet the "fit" requirement for expert testimony. Plaintiffs must prove that Mr. Kraus encountered an asbestos-containing product for which SSL is liable. However, Dr. Frank's opinion treats all exposures the same; he makes no reference to the frequency, duration or proximity of any exposure; and he groups all alleged exposures together. Dr. Frank makes no mention of or attempt to differentiate particular products, manufacturers, or bystander versus direct exposure. Thus, Dr. Frank's general testimony regarding Plaintiff's exposure and his "every exposure" theory do not tend to show that Mr. Kraus was exposed to any particular products or that Mr. Kraus's alleged exposure was a substantial factor in causing his alleged injury. Dr. Frank's testimony should be excluded as irrelevant.

### B. Dr. Frank's Opinions Are Inadmissible Under Federal Rule of Evidence 403

Notwithstanding Federal Rules of Evidence 702 and 703 and the *Daubert* factors, Dr. Frank's testimony should be excluded under Federal Rule of Evidence 403. Expert testimony is subject to Rule 403, and "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Indeed, the Supreme Court, noted in *Daubert* the uniquely important role that FRE 403 must play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations. *Daubert*, 509 U.S. at 595 (' "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'" (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991))).

Any probative value of Dr. Frank's opinions is substantially outweighed by the danger of unfair prejudice and of misleading the jury. Dr. Frank has no personal (let alone scientific) knowledge concerning any aspect of the electronic shipboard equipment aboard the USS *Cambria*. He can advance no studies concerning the products, or work to which Plaintiffs allege

9

Mr. Kraus was a bystander. So, to advance his opinion regarding exposure, Dr. Frank relies solely on Plaintiffs' counsel's flawed summary. Allowing Dr. Frank to present his exposure opinions under those circumstances would severely prejudice SSL and mislead the jury because Dr. Frank would be cloaked with the title of "expert."

Likewise, Dr. Frank advances his signature theory that causation depends merely on any asbestos exposure above background supported by no studies, peer review, or general acceptability in his field. His theory has been roundly rejected by science and by courts across the country. In *Haskins v. 3M Co.*, the district court examined the "every exposure" theory under FRE 403 ruling the testimony inadmissible. 2:15-CV-02086-DCN, 2017 WL 3118017, at *8 (D.S.C. July 21, 2017) ("[T]he probative value of [plaintiff's expert's "every exposure" theory] testimony is outweighed by its tendency to confuse and mislead the jury, and it must be excluded under Rule 403."). There, like Dr. Frank here, the plaintiff's expert opined that "whenever the total cumulative dose results in mesothelioma, every 'occupational' exposure should be considered causative, no matter how small." *Id*. at *6. The expert opinion in *Haskins* is akin to Dr. Frank's testimony here in that neither expert conducted any defendant-specific analysis. *Id*. SSL would be manifestly and unfairly prejudiced and a jury mislead were Dr. Frank's opinions admitted under these circumstances. *Id*. ("Because [the expert's] opinions evaluate causation in a manner that is inconsistent with the appropriate legal standard, they are essentially irrelevant, and any probative values they may have is easily outweighed by their tendency to confuse or mislead the jury.")

### C. Reservation of Rights for Hearing Under Rule 104 Concerning Dr. Frank's Undisclosed Hypothetical Questions

Dr. Frank indicated in his written report and repeatedly throughout his deposition testimony that he expects "to be provided hypothetical questions about the exposures to specific types of asbestos containing products" and opine based on those hypotheticals. (*See, e.g.*, Conforte Decl. ¶ 4 **Ex. 3** at 41:4–11; ¶ 2 **Ex. 1** at 2.) If Dr. Frank is permitted to testify, SSL hereby requests a preliminary hearing pursuant to Rules 104(a) and (c) so that the Court may

10

hear and rule upon the mystery hypothetical questions Dr. Frank expects to receive from Plaintiffs' counsel that have not been revealed to SSL.

## IV. CONCLUSION

SSL respectfully requests that the Court exclude Plaintiffs' expert, Dr. Arthur Frank, under FRE 702 and 703, *Daubert*, and FRE 403.

Respectfully Submitted,

Dated: January 3, 2020

GLAZIER YEE LLP

_____
Jarred M. Conforte,
CA SBN 297890, MO SBN 62813
(admitted *Pro Hac Vice*)
Glazier Yee LLP
707 Wilshire Blvd., Suite 2025
Los Angeles, California 90017
Phone: (213) 312-9200
Email: conforte@glazieryee.com

DICKIE, McCAMEY & CHILCOTE, P.C.

William R. Adams, Esquire (PA Id. #73534)
222 Delaware Avenue, Suite 1040
Wilmington, DE 19801
Phone: 302-428-6133
Email: wadams@dmclaw.com

Attorneys for Defendant
SPACE SYSTEMS/LORAL, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2020, I electronically filed the foregoing:

**DEFENDANT SPACE SYSTEM/LORAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT WITNESS DR. ARTHUR FRANK**

with the Clerk of the United States District Court for the Eastern District of Pennsylvania using the ECF system, it is available for viewing and downloading from the ECF system, and a true and correct copy was served via ECF to all counsel of record registered with the ECF system.

Dated: January 3, 2020

*/s/ Michael D. Smith*
Michael D. Smith, SBN 235727
(admitted *Pro Hac Vice*)
Glazier Yee LLP
235 Montgomery Street, Suite 1003
San Francisco, California 94123
Phone: (415) 356-11000
Email: smith@glazieryee.com

Attorneys for Defendant
SPACE SYSTEMS/LORAL, LLC