UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT J. KRAUS and MARGARET M. KRAUS, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 18-CV-2119 ) |
| ALCATEL-LUCENT, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**CBS CORPORATION'S REPLY IN SUPPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

CBS Corporation ("Westinghouse")[1] offers this reply brief in further support of its motion for summary judgment. Westinghouse is entitled to such a judgment as a matter of law on each of the grounds on which such relief was sought in its motion.

**I.     Failure of Plaintiffs' Proof of Westinghouse-Attributable Asbestos Exposure**

Under maritime law,[2] an essential element of each claim stated against Westinghouse is proof that exposure to asbestos dust from Westinghouse equipment on the *U.S.S. Cambria*

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom, Inc.), now known as ViacomCBS, Inc., is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

[2] While Plaintiffs invoke 28 U.S.C. § 1333(a)'s Saving to Suitors Clause to urge that Pennsylvania law applies to Mr. Kraus' shipboard asbestos exposure claims (*Doc. #623*, p. 13), those claims fall squarely within this Court's admiralty jurisdiction. *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455 (E.D. Pa. 2011); *Tritt v. Atlantic Richfield Co.*, 709 F. Supp. 630, 633-34 (E.D. Pa. 1989). Pennsylvania law is thus displaced despite § 1333(a), particularly as maritime law's proof of causation test in asbestos cases is well-established. *Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338, 351 (3d Cir.), *cert. denied*, 531 U.S. 1037 (2000). See also *Centennial Ins. Co. v. Lithotech Sales, LLC*, 29 Fed. Appx. 835, 836-37 (3d Cir. 2002); *Floyd v. Lykes Bros. Steamship Co.*, 844 F.2d 1044, 1046-47 (3d Cir. 1988).

(APA-36) was a substantial factor in causing the injury of Robert J. Kraus ("Mr. Kraus"). Such proof has failed here as a matter of law for two reasons.

### A. Lack of Proof that Westinghouse Supplied Equipment for the *Cambria*

First, as set forth in Westinghouse's Enumerated Statement of Fact #5, "[t]he evidence fails to provide any basis for determining whether any of the electronic equipment aboard the *Cambria* at the time of Mr. Kraus' Navy service was supplied by Westinghouse." Plaintiffs' own expert witness, Arthur Faherty, has, in fact, acknowledged that the record is devoid of evidence that could support such a finding. (*Faherty Depo.*, 384:10-385:21; 391:6-10; 401:5-9).[3]

In an attempt to undermine their own expert's admission in this regard, Plaintiffs rely solely on a collection of unauthenticated "Navy documents and pictures" which they have tendered as their "Exhibit D," and which they characterizes as showing that Westinghouse was the supplier (or "sole identified supplier") of certain types of electronic equipment (*i.e.*, TED and/or WRT radio transmitters) that were used on the *Cambria*. (*Doc. #623*, pp. 3 and 10). In fact, even overlooking the lack of any authentication whatsoever of these documents, they seem to simply reflect a handful of occasions on which, pursuant to certain Navy construction contracts **in the 1950s**, Westinghouse supplied TED or WRT units for use on unidentified Navy ships. (*Doc. #623*, pp. 55, 59, 64-65, 70 and 72). On their face, such documents have no connection to the *Cambria* – which was **built in 1942** and **commissioned in 1943** – nor do they state in any way that Westinghouse was the sole or exclusive Navy supplier of any of the types of electronic equipment at issue in this case. Rather, they appear, at most, to identify

---

[3] Excerpts of Mr. Faherty's discovery deposition, including the ones referenced herein, were attached to Westinghouse's summary judgment motion as "Exhibit C."

Westinghouse as a qualified supplier of certain types of electronic equipment used on Navy ships.

Accordingly, Plaintiffs' claims have failed as a matter of law, as the question of whether Westinghouse supplied WRT or TED units *for use on the Cambria* remains a subject of impermissible speculation. Compare *John Crane, Inc. v. Hardick*, 283 Va. 348, 379, 722 S.E.2d 610 (2012) (applying maritime law to affirm the exclusion of evidence that the defendant was a Navy-qualified supplier of a particular product given the lack of evidence that the defendant supplied that product for use on any of the specific Navy ships on which the decedent had served), *cert. denied*, 568 U.S. 1161 (2013); *Foster Wheeler USA Corp. v. Owens-Illinois, Inc.*, 595 So.2d 439, 441 (Ala. 1992) (applying maritime law to hold that the mere fact that a defendant's product was authorized for purchase by the Navy cannot raise a genuine issue as to defendant-specific causation absent proof that the defendant's product was actually used on the specific ship on which the plaintiff served); *Sheffield v. Owens-Corning Fiberglass Corp.*, 595 So.2d 443, 451-52 (Ala. 1992) (same). In short, "[p]roof that [Westinghouse TED and/or WRT radio transmitter equipment] was *approved for use* [on Navy ships], without more, falls considerably short of the proof needed to create a reasonable inference that [such Westinghouse equipment] was, in fact, [installed] on board [the *Cambria*]." *Sheffield*, 595 So.2d at 451 (emphasis in original).

**B.     Lack of Proof of Mr. Kraus' Proximity to Westinghouse Equipment Work**

Second, even assuming that Westinghouse supplied WRT or TED radio transmitter units used specifically on the *Cambria*, Plaintiffs still lack any direct evidence that Mr. Kraus was present on even a single occasion when respirable asbestos dust was created by work on those particular pieces of equipment. Consequently, Plaintiffs are left to argue in opposition to

3

Westinghouse's Enumerated Statement of Fact #3: 1) that the same maintenance/repair work was performed universally on all of the *Cambria*'s electronic equipment; and, even more importantly, 2) that Mr. Kraus was always present for the duration of any work performed on any equipment. A review of the record, however, shows that – even for summary judgment purposes – these are wholly unsupported fictions, not evidentiary facts, circumstantial or otherwise.

As to the first of these points, Mr. Kraus admitted upon deposition that maintenance/repair work "varied depending on the piece of equipment." (*Kraus Trial Depo*, 26:11-14).[4] Notably, he was not asked about, nor did he describe, the type of work, if any, he saw performed on the *Cambria*'s TED or WRT radio transmitters. That deficiency takes on added significance in light of the testimony of Mr. Kraus' fellow sailor, Roger Gossett, who – when specifically asked to describe the work, if any, performed on the *Cambria*'s TED and WRT units, did not offer a description of any work, much less of work which would have been performed in the ship's electronics shop, other than to remark that these specific items of equipment "worked pretty good. Every once in a while, you know, a tube would go bad or something like that, but a pretty good piece of equipment really." (*Gossett Depo.*, 63:1-4).[5]

As to the second, more crucial, point, the evidence of record directly contradicts Plaintiffs' fantastical assertion that Mr. Kraus was present "everyday [sic] when all work was done." Such an assertion stands in stark contrast to Mr. Kraus' own admission that he did not, and could not, recall what specific types of work he saw performed on specific types of

---

[4] Excerpts of Mr. Kraus' video deposition, including the ones referenced herein, are included in "Exhibit A" to Plaintiffs' Brief.
[5] Excerpts of Mr. Gossett's deposition, including the ones referenced herein, are included in "Exhibit A" to Plaintiffs' Brief.

equipment aboard the *Cambria*. (*Kraus Disc. Depo. (Vol. III)*, 674:7-275:12).[6]  Also, with specific regard to the *Cambria*'s WRT units, Mr. Gossett admitted that he could not state that Mr. Kraus was present when any work was performed on these units and, further, that – assuming Mr. Kraus had witnessed such work in passing – he would have been present for as little as five to ten minutes of a two-hour repair job. (*Id.*, 256:12-257:20).  Such testimony was further amplified by Joe Landrum, another of Mr. Kraus' fellow sailors, who stressed that Mr. Kraus, as a general rule, was **not** present for most electronic equipment repair/maintenance work. (*Landrum Depo.*, 41:25-42:6; 167:21-168:9).[7]

In short, the record is devoid of evidence that could make Mr. Kraus' purported exposure to Westinghouse equipment-associated asbestos dust (much less the type of non-*de minimis* exposure needed to raise a genuine issue of fact as to causation under maritime law) anything other than a matter of speculation wholly unfit for a jury.  As such, Westinghouse is entitled to a summary judgment as a matter of law.  *See, e.g., McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174-76 (9th Cir. 2016); *Lyautey v. Alfa Laval, Inc.*, 2012 WL 2877389 at *1 n.1 (E.D. Pa. Mar. 21, 2012).[8]

---

[6] Excerpts of Mr. Kraus' discovery deposition, including the ones referenced herein, were attached to Westinghouse's summary judgment motion as "Exhibit B."

[7] Excerpts of Mr. Landrum's discovery deposition, including the ones referenced herein, were attached to Westinghouse's summary judgment motion as "Exhibit D."

[8] Stated differently, and consistent with Westinghouse's prior brief, even if it is assumed, contrary to the record, that a handful of the numerous items of electronic equipment aboard the *Cambria* were, in fact, supplied by Westinghouse, proof that Mr. Kraus was exposed to asbestos dust from work performed on unspecified items of electronic equipment cannot equate to even probative evidence that he was exposed to asbestos dust from work on **Westinghouse** equipment. Compare, e.g., See, *e.g., Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 267-68 (S.D.N.Y. 2016); *Pace v. 3M Co.*, 2013 WL 1890288 at *1, n.1 (E.D. Pa. Apr. 19, 2013) *Crater v. 3M Co.*, 2012 WL 2989146 at *1, n.1 (E.D. Pa. June 29, 2012); *McCollum v. Allen-Bradley Co.*, 2011 WL 3925419 at *7 (E.D. Pa. [Mag. Div.] July 27, 2011) *Powers v. F.W. Webb Co.*, 2011 WL 4912840 at *1, n.1 (E.D. Pa. Mar. 10, 2011); *Blanks v. Pittsburgh Corning Corp.*, 2011 WL

## II.   Westinghouse's Government Contractor Defense

Given the undisputed evidence of record as to the detailed control exercised by the Navy over Westinghouse's manufacture of Navy electronic equipment (and over the form and content of any written materials to be supplied by Westinghouse with such equipment), Westinghouse has also stated a government contractor defense under *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) and *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940). This is true, both as to Plaintiffs' design defect claims and as to their failure-to-warn claims.

As to Plaintiffs' design defect claims (*i.e.*, those claims arising from the mere use of asbestos in the design and manufacture of Westinghouse's Navy equipment), Plaintiffs have wholly failed to rebut the sworn testimony of United States Navy Rear Admiral [Retired] John B. Padgett, III that: the design and manufacture of Westinghouse's Navy equipment was subject to detailed Navy design specifications ("MilSpecs"); that any use of asbestos with Westinghouse's Navy equipment was either directly compelled by those MilSpecs, or was heedfully reviewed and approved by the Navy as being MilSpec-compliant and otherwise proper; and that Westinghouse's Navy equipment was not accepted until it was determined by the Navy to be MilSpec-compliant through thorough tests and inspections. (*Padgett Aff.*, ¶¶ 30-31; 35; 41-42; 47-48).[9] In fact, Plaintiffs' "responses" to Westinghouse's Enumerated Statements of Fact ##8

---

4790612 at *1, n.1 (E.D. Pa. Jan. 28, 2011). Equally deficient is Plaintiffs' effort to show that asbestos exposure could possibly result from certain types of work performed on certain components of Westinghouse electronic equipment so that, *if* Mr. Kraus was present when such work was performed, **then** he would have been exposed to asbestos. Necessarily, such an if/then hypothesis is rendered meaningless absent the proof missing here – *i.e.*, that Mr. Kraus was, in fact, present when asbestos-containing components of Westinghouse equipment were disturbed. See, *e.g.*, *In re Asbestos Litig. [Dumas]*, 2015 WL 5766460 at *10 (D. Del. [Mag. Div.] Sept. 30, 2015); *Logan v. Air Prods. & Chems.*, 2014 WL 5808916 at *3 (M.D.N.C. Nov. 7, 2014).

[9] Admiral Padgett's affidavit was attached to Westinghouse's summary judgment motion as "Exhibit F."

and 9 are so facially deficient relative to both the letter and the spirit of the requirements specifically imposed by this Court's Scheduling Order that Westinghouse respectfully submits that those responses should be stricken, and Westinghouse's statements of fact should be deemed admitted. Cf. *Kelvin Chryosystems, Inc. v. Lightnin*, 2004 WL 2601121 at *2 (E.D. Pa. 2004), *aff'd*, 252 Fed. Appx. 469 (3d Cir. 2007). Regardless, Westinghouse's unrebutted evidence establishes its government contractor defense as to Plaintiffs' design defect claims as a matter of law. Compare *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1184-85 (7th Cir. 2012).

As to Plaintiffs' failure-to-warn claims, the evidence material to Westinghouse's government contractor defense is, again, undisputed.[10] Plaintiffs' own expert witness has, in fact, echoed Admiral Padgett in admitting: 1) that any warnings or other written materials to be supplied by Westinghouse with its equipment were, themselves, subject to detailed MilSpecs; and, 2) that the Navy carefully reviewed and approved such written materials as being MilSpec-compliant, despite their patent lack of asbestos warnings, before accepting them for shipboard use. (*Padgett Aff.*, ¶¶ 59-60); (*Faherty Depo.*, 69:4-24; 72:1-10; 73:1-6; 75:9-18). Those facts establish Westinghouse's government contractor defense as a matter of law as to Plaintiffs' failure-to-warn claims. Compare, *e.g.*, *Leite v. Crane Co.*, 749 F.3d 1117, 1123-24 (9th Cir.), *cert. denied*, 574 U.S. 934 (2014).

On their part, Plaintiffs seemingly offer only two objections to Westinghouse's government contractor defense in this case. First, they urge (in terms of the second prong of the *Boyle* test) that, because Westinghouse's equipment-related written materials did not include

---

[10] Again, Westinghouse respectfully submits that its Enumerated Statements of Fact ## 10-22 should be deemed admitted due to the patent deficiencies of Plaintiffs' responses/objections. As discussed below, however, the arguments Plaintiffs sought to advance under the guise of responding to the specific statements of fact posited by Westinghouse are insufficient as a matter of law to preclude entry of a summary judgment in this case.

asbestos warnings, they did not conform to certain broad, non-asbestos-specific, MilSpecs or similar Navy rules generally requiring safe use instructions from equipment manufacturers. Second, they argue (in terms of the third prong of the *Boyle* test) both that, in hindsight, the Navy's understanding of the scope and extent of asbestos hazards was not fully developed in the 1940s compared to today's scientific knowledge, and that Westinghouse was also aware of potential asbestos hazards. Neither of these objections is viable.

As to conformity (i.e., *Boyle*'s second prong), an item of military equipment cannot be held to deviate from government specifications regarding product warnings where, as here, the only argument for such a deviation relates to a "catch-all" specification generally calling for warnings of all hazards associated with the product. *See Tate v. Boeing Helicopters*, 140 F.3d 654, 659 (6th Cir. 1998). Thus, when (again, as here) the instructions and warnings provided by the equipment manufacturer were specifically reviewed and approved by the government, non-compliance is not shown through an argument that, despite this review and acceptance, the manufacturer in some way failed in its general duty to warn of all hazards. *Id.* (observing that any other approach would essentially substitute the court's hindsight interpretation of the relevant MilSpecs for the interpretation actually, though implicitly, given those MilSpecs by the government as part of the review and approval process, and stressing the impropriety of such an approach, as "[t]he military's interpretation of its own specifications is the very type of discretionary function that the government contractor defense is meant to insulate"). *See also Nesbiet v. General Elec. Co.*, 399 F. Supp. 2d 205, 208-09 (S.D.N.Y. 2005).

As to the comparative knowledge of asbestos hazards on the part of the Navy and Westinghouse, the third prong of the *Boyle* test is satisfied "when there is evidence in the record that the government knew about the problem and there is no evidence that the contractor

withheld any additional information about the problem." *Miller v. United Techs. Corp.*, 233 Conn. 732, 780, 660 A.2d 810 (1995). See also, *e.g.*, *Rhodes v. MCIC, Inc.*, 210 F. Supp. 3d 778, 785 (D. Md. 2016); *Sundstrom v. McDonnell Douglas Corp.*, 816 F. Supp. 587, 590-91 (N.D. Cal. 1993); *Kase v. Metalclad Insulation Corp.*, 6 Cal. App. 5th 623, 642-44 (2016). Stated somewhat differently, where the evidence, rather than clearly establishing superior knowledge of a potential hazard on the part of the defendant, tends to reflect basic parity or equivalency of knowledge on the part of the government, the third prong of the *Boyle* analysis has been satisfied. *Getz v. Boeing Co.*, 654 F.3d 852, 865-66 (9th Cir. 2011) (holding that the defendants had satisfied *Boyle* as – despite the Army's lack of knowledge of prior incidents involving helicopter engines – the Army was generally aware of a theoretical risk of such accidents and there was no indication that the defendants were anything other than "equally unaware" of the risk), *cert. denied*, 565 U.S. 1202 (2012); *Twinam v. Dow Chem Co.*, 517 F.3d 76, 101-02 (2d Cir. 2008), *cert. denied*, 555 U.S. 1218 (2009); *Yeroshefsky v. Unisys Corp.*, 962 F. Supp. 710, 721 (D. Md. 1997).

Here, Plaintiffs have not contested Samuel A. Forman, M.D.'s sworn testimony that the Navy had at least generalized knowledge of health hazards associated with asbestos by the 1920s, and had, beginning many years before Mr. Kraus' Navy service, implemented various industrial hygiene practices to avoid excessive exposures involving the use of asbestos on its ships. (*Forman Decl.*," ¶¶ 27; 31).[11] Further, while Plaintiffs urge that the Navy's 1940s knowledge of asbestos hazards was incomplete as compared to today's modern understanding, they have wholly failed to demonstrate that Westinghouse's past knowledge was not likewise

---

[11] Dr. Forman's declaration was attached to Westinghouse's summary judgment motion as "Exhibit G."

limited by the developing state-of-the art in terms of medical and scientific research. In fact, the evidence submitted by Plaintiffs is, perhaps, most notable, in reflecting that the industrial hygiene practices historically employed by Westinghouse to protect persons in its own manufacturing facilities from excessive asbestos exposures largely track the asbestos safety practices directed by the Navy for use by its personnel aboard its ships. Such a record suffices to satisfy *Boyle*'s third prong. Compare *Getz*, 654 F.3d at 865-66.

### III. Plaintiffs' Punitive Damages Claims

As to punitive damages, Plaintiffs simply urge, *sans* supporting authority, that a sufficient showing of Westinghouse culpability or fault could be made in this case to support a recovery of punitive damages. In so doing, Plaintiffs miss the point. Regardless of any fault or culpability on Westinghouse's part, a recovery of punitive damages is simply not available as a matter of law relative to a product liability claim brought by, or on behalf of, a seaman such as Mr. Kraus. *Dutra Group v. Batterton*, 139 S. Ct. 2275, 2278 (2019). See also, *e.g.*, *McBride v. Estis Well Serv.*, 768 F.3d 382 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 2310 (2015); *Kopcyznski v. The Jacqueline*, 742 F.2d 555, 561 (9th Cir. 1984), *cert. denied*, 471 U.S. 1136 (1985); *Frantz v. Brunswick Corp.*, 866 F. Supp. 527, 532-33 (S.D. Ala. 1994). As such, any punitive damages claim in this case has failed as a matter of law.

### III.   Conclusion

For the reasons set forth herein and in Westinghouse's prior brief, Plaintiffs' claims against Westinghouse have failed as a matter of law. Accordingly, Westinghouse respectfully prays that its summary judgment motion be granted, that all claims against it be dismissed with prejudice, and that it be afforded any and all other relief deemed proper by this Court.

Dated:  January 31, 2020

                                                        Respectfully submitted,

                                                        /s/ John P. McShea
                                                        John P. McShea
                                                        Conrad O. Kattner
                                                        Clarissa Greenman Raspanti
                                                        **McSHEA LAW FIRM, P.C.**
                                                        Centre Square, West Tower
                                                        1500 Market Street, 40th Floor
                                                        Philadelphia, PA 19102
                                                        (215) 599-0800

                                                        Attorneys for Defendant
                                                        CBS Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 31st day of January 2020, I electronically filed the foregoing Defendant CBS Corporation's Reply Brief in Support of its Motion for Summary Judgment with the Clerk of Court using the *CM/ECF* system, which will automatically send email notification of such filing to all counsel of record.

                                                /s/ John P. McShea
                                                John P. McShea